THE STATE EX REL. PONTILLO, APPELLANT, *v.* PUBLIC EMPLOYEES
RETIREMENT SYSTEM BOARD, APPELLEE.

[Cite as *State ex rel. Pontillo v. Pub. Emp. Retirement
Sys. Bd.,* 98 Ohio St.3d 500, 2003-Ohio-2120.]

(No. 2002–1763—Submitted March 25, 2003—Decided May 7, 2003.)

**Per Curiam.**

{¶ 1} From October 1994 to June 1998, Cuyahoga Community College in Cleveland, Ohio, employed appellant, Cyril J. Pontillo, as the District Vice-President of Business, Community, and Economic Development. Pontillo's duties included providing leadership for the college's workforce development unit and coordinating services with campus provosts. Pontillo was a member of the Public Employees Retirement System of Ohio ("PERS").

{¶ 2} After experiencing back pain exacerbated after he fell off a treadmill in January 1998, Pontillo had a magnetic resonance imaging scan, which revealed a growth near his spine. In June 1998, Pontillo had the growth removed, and he did not return to work.

{¶ 3} In April 2000, Pontillo applied for disability retirement benefits with PERS. In his application, Pontillo stated that he believed he was incapacitated for his duties because following his surgery, he "was left with the inability to walk, stand for more than 5–10 minutes, move in/out of automobiles/buses without support fixtures, climb or descend stairs due to physical discomfort and limitations of movement per knee and legs and lower back area."

{¶ 4} Pontillo also submitted an April 12, 2000 report of his attending physician, neurosurgeon Kamel F. Muakkassa, M.D. On the printed form provided for the doctor's report, spaces were included for Pontillo's subjective and objective symptoms and Dr. Muakkassa's diagnosis, including test results:

{¶ 5} "The subjective and objective symptoms of which said employee complains are as follows:

{¶ 6} "Diagnosis: (Please include any test results which enabled you to make this diagnosis, ie: X-rays, MRI readings, etc.)"

{¶ 7} Dr. Muakkassa recorded Pontillo's complaints as low-back pain, right-leg and left-thigh weakness, right-foot numbness, and gait difficulty. Dr. Muakkassa diagnosed degenerative lumbar disease at L2–5, lumbar disc disease at L3–5, and bilateral facet joint hypertrophy at L2–S1, but he did not include or specify any test results that supported his diagnosis. Dr. Muakkassa reported that Pontillo was physically incapacitated for the performance of his duties because his pain limited his ability to walk, sit, or stand for prolonged periods of time.

{¶ 8} Pontillo subsequently provided PERS with a report completed by his employer. In the report, Sunil Chand, the Executive Vice–President of Academic and Student Affairs at Cuyahoga Community College, specified that Pontillo's duties as district vice-president required constant mobility, including "regular meetings with internal and especially external leaders; tours of facilities, on-site inspections; meetings at early and late hours; [and] travel locally and nationally."

{¶ 9} Pursuant to R.C. 145.35(E), PERS contacted Pontillo to arrange for an independent medical examination. PERS sent the physician a copy of Dr. Muakkassa's report. On June 5, 2000, Kennard C. Ford, M.D., examined Pontillo on behalf of PERS and diagnosed spinal stenosis and left-knee osteoarthritis. Pontillo advised Dr. Ford that he had retired from Cuyahoga Community College and currently worked as a consultant for a real estate company. Pontillo further advised Dr. Ford that he could not "tolerate the driving and physical activity, including walking up and down steps that is required at [the college]," but that he was active at a wellness center, exercising both in and out of the water.

{¶ 10} Dr. Ford observed that Pontillo walked into his office "with no difficulty whatsoever," that his back incision had "healed perfectly," that his hip range of motion had "improved to the point where he is able to lay his hands on the floor with his knees straight," and that the manual motor strength of his bilateral lower extremities was "at least 4+/5." Dr. Ford also found a significant decrease in Pontillo's range of motion for his left knee and significant bony hypertrophy consistent with osteoarthritis of his left knee.

{¶ 11} Dr. Ford concluded that based upon his physical examination, Pontillo was not physically incapacitated for the performance of his duties and should not be entitled to disability retirement benefits:

{¶ 12} "From this man's executive position, I do not believe there is any type of lifting involved, and at the University, I am confid[e]nt that he would certainly be within ADA accessible buildings."

{¶ 13} Two other physicians then reviewed the medical reports and job description and concluded that Pontillo was not permanently disabled for his job.

These medical consultants recommended that Pontillo's application for disability retirement benefits be denied.

{¶ 14} On August 16, 2000, appellee, Public Employees Retirement Board, determined that "[b]ased upon all the medical information and recommendations * * * [Pontillo is] not permanently disabled from performing [his] job duties as a District Vice President of Business, Community, and Economic Development." The board found that "[t]here was not significant objective medical evidence of a disabling condition." By letter dated August 16, 2000, the board informed Pontillo that it denied his application for disability retirement benefits. The board further notified Pontillo of his right under Ohio Adm.Code 145–11–02 to appeal its decision by submitting additional objective medical evidence within the applicable time requirements.

{¶ 15} On September 7, 2000, Pontillo submitted his notice of intent to appeal the board's decision by providing objective medical evidence. Pontillo stated that a "licensed physician will provide additional objective medical evidence within [the board's] specified time lines." After the time to submit additional objective medical evidence under Ohio Adm.Code 145–11–02(B)(3)(e) had elapsed, Dr. Muakkassa sent another report concerning Pontillo to PERS by letter dated May 16, 2001. Dr. Muakkassa again concluded that Pontillo was physically disabled from performing his job at the college.

{¶ 16} On June 1, 2001, PERS notified Pontillo that it could not consider Dr. Muakkassa's May 16, 2001 report because his time to appeal the board's August 16, 2000 decision had expired.

{¶ 17} On November 21, 2001, Pontillo filed a complaint in the Court of Appeals for Franklin County for a writ of mandamus to compel the board to vacate its decision denying him disability retirement benefits and to award him those benefits. The board filed an answer, and the parties submitted evidence and briefs. Pontillo argued in the alternative that the court of appeals should grant a limited writ of mandamus directing the board to vacate its August 2000 decision and accept additional objective medical evidence to determine Pontillo's entitlement to disability retirement benefits.

{¶ 18} In May 2002, a court of appeals magistrate issued a decision recommending that Pontillo's request for a writ of mandamus be denied. Pontillo objected to the magistrate's decision, and in September 2002, the court of appeals overruled Pontillo's objections, adopted the magistrate's decision, and denied the requested writ of mandamus.

{¶ 19} This cause is now before the court upon Pontillo's appeal as of right as well as his motion for oral argument.

## Oral Argument

{¶ 20} Pontillo moves for oral argument. We deny the motion. "S.Ct. Prac.R. IX(2) does not require oral argument in this appeal, and the parties' briefs are sufficient to resolve this case." *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 13.

## Mandamus: Adequate Remedy

{¶ 21} Pontillo asserts that the court of appeals erred in denying his requested writ of mandamus. Although he requested in the court of appeals a writ of mandamus to compel the board to vacate its August 2000 decision and award him disability retirement benefits, he now requests only a "limited writ of mandamus ordering PERS to vacate its decision denying disability retirement benefits and permit [him] to offer objective medical evidence in support of his application, and to then issue a new decision based upon this objective medical evidence and a reexamination by a competent disinterested physician."

{¶ 22} PERS provides disability coverage to each member who has at least five years of total service. R.C. 145.35(B). The board reviews disability applications and recommendations of its medical examiners and medical consultants and renders final determinations on the applications. Ohio Adm.Code 145–11–01(C).

{¶ 23} In general, in the absence of an available appeal, mandamus is an appropriate remedy by which claimants can obtain relief from an adverse determination concerning disability retirement benefits or other retirement decisions. See *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.*, 97 Ohio St.3d 198, 2002-Ohio-5806, 777 N.E.2d 259, ¶ 6; *State ex rel. Mallory v. Pub. Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 239, 694 N.E.2d 1356; *State ex rel. McMaster v. School Emp. Retirement Sys.* (1994), 69 Ohio St.3d 130, 133, 630 N.E.2d 701.

{¶ 24} Nevertheless, a "writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law." R.C. 2731.05; see, e.g., *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 96 Ohio St.3d 400, 2002-Ohio-4906, 775 N.E.2d 512, ¶ 6.

{¶ 25} To the extent that he requests a writ of mandamus to compel the board to accept additional objective medical evidence in support of his claim, Pontillo had an adequate remedy at law. Ohio Adm.Code 145–11–02 provides for appeals from a board's denial of benefits in which the claimant can provide additional objective medical evidence if the evidence is submitted within the specified time period:

{¶ 26} "(B)(1) After the retirement board has either denied an application for, or terminated, a disability benefit, the member shall be notified in writing of such action.

{¶ 27} "* * *

{¶ 28} "(3) The notice shall include the following information:

{¶ 29} "* * *

{¶ 30} "(b) The member's right to file a written notice of intent to provide additional objective medical evidence. Such notice of intent must be received by the retirement board no later than thirty days from the date of the notice of denial or termination.

{¶ 31} "* * *

{¶ 32} "(d) Such additional evidence shall be current medical evidence documented by a licensed physician specially trained in the field of medicine covering the illness or injury for which the disability is claimed and such evidence has not been considered previously by the retirement board. *Such additional medical evidence shall be presented in writing by the member and shall constitute an appeal of the denial or termination.*

{¶ 33} "(e) Failure to provide the additional medical evidence within forty-five days of the member's notice of intent to provide such evidence shall make the retirement board's action final to such application or benefit unless an extension for submission of such evidence has been requested and granted within the forty-five days. Only one extension, not to exceed forty-five days, may be granted by the retirement board's staff." (Emphasis added.)

{¶ 34} Although Pontillo filed a notice of intent to provide additional objective medical evidence under Ohio Adm.Code 145–11–02(B)(3)(b), he failed to timely submit additional objective medical evidence. The fact that his appeal is no longer available because he failed to timely pursue it does not render the remedy inadequate. *In re Estate of Davis* (1996), 77 Ohio St.3d 45, 46, 671 N.E.2d 9.

### Abuse of Discretion

{¶ 35} Furthermore, in challenging by mandamus the board's denial of benefits, Pontillo had to establish that the board abused its discretion. *Mallory*, 82 Ohio St.3d at 239, 694 N.E.2d 1356; *McMaster*, 69 Ohio St.3d at 133, 630 N.E.2d 701. The board abused its discretion if it acted in an unreasonable, arbitrary, or unconscionable manner. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14.

{¶ 36} Pontillo contends that the board abused its discretion by (1) failing to inform him that significant objective medical evidence of a disabling condition is required to support a claim for disability retirement benefits and (2) selecting a physician who was not competent and disinterested to examine him.

{¶ 37} Pontillo's contentions lack merit. It is not clear from the board's August 2000 decision whether it *requires* every claimant to submit "significant

objective medical evidence of a disabling condition" to be entitled to disability retirement benefits.

{¶ 38} Moreover, even if the board has instituted this standard, it did not deceive or mislead Pontillo and other claimants in doing so. The attending physician's report form asks the doctor to note the "subjective and *objective symptoms*" of which the claimant complains. (Emphasis added.) And the diagnosis portion of the report requests that the doctor "[p]lease include *any test results* which enabled [the doctor] to make this diagnosis, ie: X-rays, MRI readings, etc." Further, Ohio Adm.Code 145-11-02(B)(3)(b) refers to "additional *objective medical evidence.*" (Emphasis added.) Therefore, the board did not abuse its discretion in this regard.

{¶ 39} Nor did the board abuse its discretion by ordering Pontillo to be examined by Dr. Ford. The board is authorized to select competent, disinterested physicians to conduct medical examinations of disability retirement claimants:

{¶ 40} "Medical examination of a member who has applied for a disability benefit shall be conducted by a *competent disinterested physician* or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent." (Emphasis added.) R.C. 145.35(E).

{¶ 41} Pontillo claims that Dr. Ford was not a "competent disinterested physician" because he did not have a copy of Pontillo's job description and he did not request additional medical records of Pontillo from Dr. Muakkassa. In construing a statute, we must review the language, "reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage." *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36. The ordinary meaning of "competent" is "possessed of or characterized by marked or sufficient aptitude, skill, strength, or knowledge," and "disinterested" means "[f]ree from bias, prejudice, or partiality." Webster's Third New International Dictionary (1986) 463; Black's Law Dictionary (7th Ed.1999) 481.

{¶ 42} Applying these ordinary definitions here, it is evident that Dr. Ford is disinterested because there is no evidence of bias, prejudice, or partiality on his part. Regarding his competence, nothing in the record establishes that he does not have the requisite physician's knowledge and skill.

{¶ 43} Nevertheless, Pontillo claims that by not reviewing his job description, Dr. Ford was incompetent. But none of the applicable statutes or rules requires the examining physician to have read the employer's report, although it might be preferable for a physician to do so. And Dr. Ford's report indicates that Pontillo described his job duties to him, emphasizing the driving and walking associated with his job. In addition, two other physicians who recommended that Pontillo's

application be denied had reviewed the employer's description of Pontillo's job as well as all of the medical evidence.

{¶ 44}  Furthermore, no statute or rule required Dr. Ford or the board to accept Dr. Muakkassa's report or request additional records that Dr. Muakkassa and Pontillo did not timely provide.  Pontillo's reliance on Ohio Adm.Code 145–11–01(B)(1) to assert otherwise is misplaced.  This rule expressly provides that the examining physician selected by the board may rely on his own examination: "Consideration of a member's application [for disability retirement benefits] shall be limited to the disabling condition(s) listed in the application *or disclosed by the examination of the physician(s) selected by the retirement system.*"  (Emphasis added.)

{¶ 45}  Based on the foregoing, Pontillo failed to establish that the board abused its discretion by denying his application for disability retirement benefits.  Therefore, the court of appeals correctly denied the writ.  We affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

———————

John L. Wolfe, for appellant.

Jim Petro, Attorney General, Joseph M. Marotta and Michael R. Gladman, Assistant Attorneys General, for appellee.