THE STATE EX REL. MALONEY, JUDGE, *v.* SHERLOCK ET AL., COMMRS.

THE STATE EX REL. DELLICK, JUDGE, *v.* SHERLOCK ET AL., COMMRS.

[Cite as *State ex rel. Maloney v. Sherlock,*
100 Ohio St.3d 77, 2003-Ohio-5058.]

(Nos. 2003–0171 and 2003–0172—Submitted August
26, 2003—Decided September 25, 2003.)

**Per Curiam.**

{¶ 1} In July 2002, Elizabeth Sublette, the Director of the Mahoning County Office of Management and Budget, issued a memorandum to the county "departments," including the Probate and Juvenile Divisions of the Mahoning County Court of Common Pleas. In the memorandum, Sublette forecast a general-fund revenue decrease of 18 percent to 20 percent for 2003 and advised these departments to "begin the process of reducing the cost of service."

{¶ 2} In August 2002, Sublette sent the departments a second memorandum in which she specified that budget papers for 2003 would be sent to them within the week and reminded them about the projected decline in revenue for 2003 and the necessity for each department to reduce costs. Sublette subsequently sent the budget forms to the departments, including the probate and juvenile courts, and instructed them to submit the forms by e-mail by September 30, 2002. Included with these materials, Sublette provided each department's 2002 budget as well as a target number for each department's 2003 budget request. The probate court's 2002 budget was $907,912, and the target number for the court for 2003 was $715,000. The juvenile court's 2002 budget was $5,349,391, and the target number for the court for 2003 was $4,300,000.

{¶ 3} Sublette and Mahoning County Administrator Gary Kubic set these initial 2003 target numbers based on department expenditures for 2000 because the county revenue projections for 2003 were comparable to the county's 2000 expenditures. They provided the target numbers as department totals rather than line-item amounts to allow the various department heads to program their budgetary needs from the targets.

{¶ 4} The county followed the practice that if the departmental budget request was within the target amount, the Mahoning County Board of Commissioners would appropriate all of the department's line-item amounts. If the budget request was not within the target amount, the board would appropriate only the target amount and give the noncomplying departments the opportunity to make their own changes of line-item amounts in order to stay within the appropriated amount.

{¶ 5} Before December 2002, Sublette was notified by the county auditor of a new estimate of revenues for 2003 that was $2 million to $3 million higher than the previous total, which she had used to set the original target numbers for the county departments' 2003 budget requests. Sublette then adjusted the target numbers for the departments' 2003 budgets to account for this additional revenue. In setting and adjusting the target numbers for the county departments' budgets for 2003, Sublette did not consider the particular programs of the various departments.

## Mahoning County Probate Court

{¶ 6} In 1996, relator Timothy P. Maloney was elected judge of the Mahoning County Court of Common Pleas, Probate Division, and he has held that office since February 1997. In 1996, the probate court's budget was $849,262 and its actual expenditures were $790,173. In 2002, the probate court's budget was $907,912 and its actual expenditures were $875,511. For 2002, administrative salaries accounted for $521,648 of the probate court's budget and $520,074.79 of its actual expenditures.

{¶ 7} Despite the county's request that all county departments submit their 2003 budget requests by September 30, 2002, Judge Maloney did not fill out any of the forms provided and did not submit a request by that date. Judge Maloney has never complied with the county's request for budget forms; instead, he has always submitted his budget by court order.

{¶ 8} On December 17, 2002, Judge Maloney entered a judgment ordering the Mahoning County Board of Commissioners to appropriate the sum of $922,196 for the probate court's 2003 budget, including $557,742 for administrative salaries. Judge Maloney's budget order exceeded the county's initial target number of $715,000 and its adjusted target number of $750,000.

{¶ 9} According to Judge Maloney, he increased the salaries for certain probate court employees for several reasons, including that they had not had raises the year before, that they may not have gotten raises during some other year in the previous six years, and that he thought the raises were reasonable and necessary to maintain the court's status quo against the private sector. Judge Maloney stated that "paying reasonable, though not excessive, wages is necessary in order to retain the services of qualified, professional employees in the Probate Court." Judge Maloney further claimed that the pay increases were justified because of the level of multitask work they performed and a city income tax that had been increased an additional 0.5 percent.

{¶ 10} On December 19, 2002, the board passed Resolution 02–524, which approved a total general-fund appropriation for 2003 of $47,669,845, with $750,000 of that sum appropriated for the probate court. One of the three county commissioners believed that Judge Maloney's $922,196 budget order was neither unreasonable nor unnecessary. Another commissioner did not find anything about Judge Maloney's budget order unreasonable or unnecessary except for one salary adjustment for Lucy Lovell, the probate court administrator.

{¶ 11} Additionally, on December 19, 2002, the board adopted Resolution 02–534, in which it ordered a payroll deduction of 10 percent of the health insurance premium for all Mahoning County employees not covered by any collective bargaining agreement. The board based the deduction in part on the State Auditor's recommendation. Most probate court employees would be subject to this deduction. Previously, all probate court employees had been offered health insurance coverage completely paid for by the county. Judge Maloney refused to implement the 10 percent payroll deduction for probate court employees, and the board has not collected the ordered deduction.

### Mahoning County Juvenile Court

{¶ 12} Relator Theresa Dellick was appointed judge of the Mahoning County Court of Common Pleas, Juvenile Division, and she took office in April 2001. In 2001, the juvenile court's budget was $5,103,682 and its actual expenditures were $4,891,200.75. In 2002, the juvenile court's budget was $5,343,391 and its actual expenditures were $5,144,577.57.

{¶ 13} In September 2002, the juvenile court requested and was granted an extension from the county to submit its 2003 budget request and forms. On November 21, 2002, the juvenile court sent its budget request and forms to the county. The juvenile court requested a 2003 budget of $6,923,499.22. On November 26, 2002, Judge Dellick ordered the Mahoning County Board of Commissioners to appropriate the requested $6,923,499.22 for the juvenile court's 2003 budget. Judge Dellick's budget order exceeded the county's initial target number of $4,300,000 and its final adjusted target number of $4,600,000. Includ-

ed in Judge Dellick's 2003 budget was a substantial increase in administrative and other salaries.

{¶ 14} According to the Director of the Mahoning County Human Resources Department, excluding changes from part-time to full-time employment, juvenile court employees received an average salary increase of 18.76 percent from 2001 to 2003. The county commissioners and the director of the county office of management and budget all acknowledged that when compared to similarly situated employees in Mahoning and other counties, juvenile court employees were underpaid.

{¶ 15} At the request of the county commissioners and the county administrator, the State Auditor conducted a performance audit of certain county offices, including the juvenile court. In the Auditor's January 9, 2002 report, he noted that the juvenile court detention center employees' compensation was 21.7 percent below peer averages in comparable counties and other juvenile court employees' compensation was 5.1 percent below these averages.

{¶ 16} Judge Dellick relied on her own records, which indicated that on average, her juvenile court employees were paid 22 percent less than their counterparts in Mahoning and other counties performing similar duties. Judge Dellick increased salaries for juvenile court employees from 2001 to 2003 in order to rectify this inequity. Judge Dellick did not rely on the State Auditor's report, because it did not reflect the status of the juvenile court at the time she became judge and she thought that the report was inaccurate in some details.

{¶ 17} When Sublette set the original and final 2003 budget target numbers for the juvenile court, she did not assess the specific operations or employees of the court. She was, however, generally aware that the performance audit had concluded that at least some juvenile court employees were paid at rates substantially below other Mahoning County employees and juvenile court employees in other counties. Kubic recommended that the commissioners reject Judge Dellick's 2003 budget order because the wage increases were unreasonable. Kubic conceded that the wage increases "would be considered normal" in the private sector but concluded that given the county's lack of funds, the increases were unreasonable. Kubic did not advise the county commissioners that any aspect of the juvenile court's 2003 budget was unnecessary.

{¶ 18} On December 19, 2002, in Resolution 02–524, the board appropriated $4,600,000 of the requested $6,923,499.22 to the juvenile court for its 2003 budget. One of the commissioners determined that the juvenile court's 2003 budget request was unreasonable because there was not enough money to fund the request rather than because juvenile court employees would be overpaid. This commissioner did not find any aspect of the budget request to be unnecessary. A second commissioner's decision not to appropriate the requested funds to the

juvenile court had absolutely nothing to do with how Judge Dellick operated the juvenile court. Instead, he concluded that the budget request was unreasonable and unnecessary simply because the county did not have sufficient funds and stated that if the county had the money, it would have been appropriated. The remaining commissioner emphasized that she determined Judge Dellick's budget request to be unreasonable because of "the number itself" and the fact that most other county offices, including some courts, had complied with the requested target numbers.

{¶ 19} Like the probate court employees, juvenile court employees had historically been afforded health insurance paid for by the county as part of their compensation. With Resolution 02–534, however, also passed on December 19, 2002, the county commissioners authorized a payroll deduction of 10 percent of the health insurance premium for these employees' wages. Judge Dellick refused to permit this deduction because she believed that it would likely lead to employee turnover and a decline in efficiency and professionalism.

### 2003–0171 and 2003–0172

{¶ 20} On January 27, 2003, in case No. 2003–0171, Judge Maloney filed a complaint in this court for a writ of mandamus to compel respondents, Vicki Allen Sherlock, Edward Reese, and David Ludt, as Mahoning County Commissioners, to appropriate the entire $922,196 he had ordered for the 2003 probate court budget and amend the board resolution regarding the payroll deduction for 10 percent of the health insurance premium to prevent its applicability to probate court employees. Judge Maloney also requested an award of costs and fees, including attorney fees, to be assessed against the commissioners in their individual capacities.

{¶ 21} On the same date, in case No. 2003–0172, Judge Dellick filed a complaint in this court for a writ of mandamus to compel the commissioners to appropriate the $6,923,499.22 she had ordered for the 2003 juvenile court budget and rescind the board resolution authorizing a 10 percent health insurance deduction insofar as it applied to juvenile court employees. Judge Dellick further requested costs and fees against the commissioners in their individual capacities.

{¶ 22} The commissioners filed answers to the judges' complaints, and after mediation did not resolve the cases, they were returned to the regular docket in April 2003. *State ex. rel. Maloney v. Sherlock*, 98 Ohio St.3d 1519, 2003-Ohio-1742, 786 N.E.2d 468; *State ex rel. Dellick v. Sherlock*, 98 Ohio St.3d 1519, 2003-Ohio-1742, 786 N.E.2d 468. In May 2003, we granted alternative writs in both cases and denied the motions for leave to intervene of the Mahoning County Township Association. *State ex rel. Maloney v. Sherlock*, 98 Ohio St.3d 1560, 2003-Ohio-2242, 787 N.E.2d 1226; *State ex rel. Dellick v. Sherlock*, 98 Ohio St.3d 1560, 2003-Ohio-2242, 787 N.E.2d 1226.

{¶ 23} These cases are now before us upon the parties' evidence and briefs. Because these cases raise similar legal issues and involve the same respondents and attorneys, we consolidate them for purposes of decision. See, e.g., *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 90, 637 N.E.2d 306; *State ex rel. Maynard v. Corrigan* (1998), 81 Ohio St.3d 332, 691 N.E.2d 280.

## Mandamus: Application, Burden of Proof, and Presumptions in Common Pleas Court Appropriation Cases

{¶ 24} Judge Maloney and Judge Dellick request writs of mandamus to compel the commissioners to comply with their appropriation orders for 2003. In resolving their claims, the following well-established standards govern our analysis.

{¶ 25} "It is well settled that mandamus is an appropriate vehicle for enforcing a court's funding order." *State ex rel. Donaldson v. Alfred* (1993), 66 Ohio St.3d 327, 329, 612 N.E.2d 717. Common pleas courts and their divisions have inherent power to order funding that is reasonable and necessary to the courts' administration of their business. *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 511, 651 N.E.2d 937 (probate court); *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose* (1991), 58 Ohio St.3d 220, 221, 569 N.E.2d 1046 (juvenile court). "In turn, the board of county commissioners is obligated to appropriate the requested funds, unless the board can establish that the court abused its discretion by requesting unreasonable and unnecessary funding." *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 60, 734 N.E.2d 811; *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 61, 543 N.E.2d 478.

{¶ 26} In effect, the courts' funding orders are presumed reasonable, and the board must rebut the presumption in order to justify its noncompliance with these orders. *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 204, 205, 580 N.E.2d 1090. "This presumption emanates from the separation-of-powers doctrine because courts must be free from excessive control by other governmental branches to ensure their independence and autonomy." *Wilke*, 90 Ohio St.3d at 60–61, 734 N.E.2d 811.

{¶ 27} With these standards in mind, we now consider the merits of the judges' mandamus claims.

## 2003 Probate Court Budget

{¶ 28} In trying to meet their burden to rebut the presumed reasonableness of Judge Maloney's funding order for the probate court for 2003, the commissioners assert that Judge Maloney abused his discretion by ordering wage increases for certain employees that were supported by "no evidence other than [the judge's] own opinion." Judge Maloney abused his discretion if he acted in an unreason-

able, arbitrary, or unconscionable manner. *State ex rel. Pontillo v. Pub. Emp. Retirement Sys. Bd.*, 98 Ohio St.3d 500, 2003-Ohio-2120, 787 N.E.2d 643, ¶ 35.

{¶ 29} "In the absence of an abuse of discretion on the part of the judge of the Probate Court in making up the annual budget * * *, the Board of County Commissioners is obligated to appropriate annually such sum of money as will meet all the administrative expenses of such court which the judge thereof deems necessary, *including such salaries of court appointees as the judge shall fix and determine * * *.*" (Emphasis added.) *State ex rel. Ray v. South* (1964), 176 Ohio St.. 241, 27 O.O.2d 133, 198 N.E.2d 919, paragraph two of the syllabus.

{¶ 30} The commissioners have not rebutted the presumption here.

{¶ 31} The director of the county office of management and budget set the 2003 budget numbers by a method that was not based on the programs or needs of the probate court. The commissioners then relied on those numbers to assess the propriety of the court's budget order. This violates the precept that the reasonableness of a court's funding request "must be determined 'only from a consideration of the request in relation to the factual needs of the court for the proper administration of its business.'" *State ex rel. Milligan v. Freeman* (1972), 31 Ohio St.2d 13, 18, 60 O.O.2d 7, 285 N.E.2d 352, quoting *State ex rel. Moorehead v. Reed* (1964), 177 Ohio St. 4, 5, 28 O.O.2d 409, 201 N.E.2d 594.

{¶ 32} The commissioners treated the probate and juvenile courts in the same manner as nonjudicial offices. They thereby failed to accord the courts the budgetary priority required by the constitutional doctrine that underlies the presumption that these courts' funding orders are reasonable. *Wilke*, 90 Ohio St.3d at 60–61, 734 N.E.2d 811.

{¶ 33} Moreover, Judge Maloney's 2003 budget order is supported by other evidence besides his own opinion. The 2003 budget order was only about 8.6 percent greater than the probate court's 1996 budget and exceeded the court's 2002 budget by only about 1.6 percent. Commissioner Ludt testified that Judge Maloney's budget order was neither unreasonable nor unnecessary, and Commissioner Reese testified that except for one salary adjustment for the probate court administrator, he found nothing about Judge Maloney's order to be unreasonable or unnecessary. That probate court administrator had been promoted from assistant court administrator.

{¶ 34} Finally, respondents cite no persuasive authority to support their argument that a judge's opinion is insufficient to justify an increase in salaries. And, contrary to respondents' claims, salary-comparison studies, while helpful in assessing the reasonableness of a court's funding order, have never been held to be a prerequisite for a writ of mandamus to compel compliance with a court's funding order. See, e.g., *Morley, Weaver,* and *Ray* (writs of mandamus granted

to compel compliance with court funding orders that included salary increases even though there was no evidence of any salary-comparison study).

{¶ 35} Therefore, the board failed to rebut the presumed reasonableness of Judge Maloney's 2003 budget order.

## 2003 Juvenile Court Budget

{¶ 36} The commissioners assert that Judge Dellick abused her discretion in her 2003 juvenile court budget because her requests for salary increases were not supported by the evidence upon which she relied and she ignored the State Auditor's performance audit.

{¶ 37} The commissioners' assertion lacks merit. In concluding that the juvenile court's 2003 budget was unreasonable, they claim that salary increases of 18 percent are not supported by the evidence that Judge Dellick relied upon, which they state supports increases of only 7.3 percent. As Judge Dellick notes, however, the evidence that the commissioners cite is stipulated to be only "part of the documents" received by her to establish salaries for juvenile court employees. Further, the 7.3 percent figure that the commissioners specify is derived from only one portion of the submitted evidence, which involves only detention center employees and notes that unlike other employees in comparable counties, the juvenile court lacked an escalating scale for pay rates based on years of service, training, and work record.

{¶ 38} Moreover, Judge Dellick's budget order is supported by the record. The commissioners conceded that the juvenile court employees were underpaid. Judge Dellick's determination that the employees were paid 22 percent less on average than similarly situated employees in Mahoning County and other counties is comparable to one of the calculations of the State Auditor, i.e., 21.7 percent, and is consistent with their average salary increase, which was calculated by the county human resources director to be 18.76 percent from 2001 to 2003. Commissioner Reese's conclusion that the budget was unreasonable was not due to any overpayment of court employees, and he did not find any aspect of the budget unnecessary. Commissioner Ludt stated that if the county had had sufficient funds, they would have appropriated all of Judge Dellick's 2003 budget order.

{¶ 39} Further, like the probate court target numbers, the county set the juvenile court budget numbers without regard to the needs of the court. By mistakenly treating the juvenile court as another county department, the commissioners disregarded the court's constitutional entitlement to budgetary priority.

{¶ 40} Finally, Judge Dellick did not abuse her discretion by not relying on the State Auditor's report. She testified that some of the information contained in the report was either outdated or inaccurate. Instead, she independently deter-

mined the ordered items reasonable and necessary for the operation of the juvenile court in 2003.

{¶ 41} Consequently, the commissioners have failed to rebut the presumed reasonableness of Judge Dellick's 2003 budget order.

### Impossibility and Undue Hardship

{¶ 42} The commissioners next contend that the writs should not issue, because they do not have unencumbered funds sufficient to meet the judges' demands, the requested performance is impossible, and funding the court orders would cause the collapse of county government.

{¶ 43} Although "claims of governmental hardship, standing alone, are not determinative as to whether a court has committed an abuse of discretion in the budgetary process, * * * such claims are * * * one relevant factor." *State ex rel. Britt v. Franklin Cty. Bd. of Commrs.* (1985), 18 Ohio St.3d 1, 3–4, 18 OBR 1, 480 N.E.2d 77. Thus, government hardship is insufficient by itself to establish an abuse of discretion in determining the required amount of court funding. *Weaver,* 62 Ohio St.3d at 206–207, 580 N.E.2d 1090.

{¶ 44} The commissioners' claim lacks merit. The director of the county office of management and budget could have applied the $2 million to $3 million that was added to the initial budget to the probate and juvenile courts' requests, but she did not, based on an arbitrary determination rather than any analysis of the needs and programs of the courts.

{¶ 45} In addition, the alleged present unavailability of funds is not a viable defense to the judges' mandamus actions, because of the availability of funds at the time of the judges' budget orders and the commissioners' duty to fund the courts' reasonable and necessary requests:

{¶ 46} "At the time the request for funds was made by relator the monies were neither appropriated nor encumbered. The board had a mandatory duty at that time to comply with relator's request so long as it was reasonable. It cannot escape its duty by appropriating such funds to others[;] neither can it use such prior appropriation as a defense in an action such as this. It had, and still has, a mandatory duty to comply with relator's request." *State ex rel. Foster v. Wittenberg* (1968), 16 Ohio St.2d 89, 91, 45 O.O.2d 442, 242 N.E.2d 884.

{¶ 47} Nor is the commissioners' duty to appropriate the ordered amounts vitiated by the fact that compliance with the court's requests would work an undue hardship on other offices and agencies. *Weaver,* 62 Ohio St.3d at 208, 580 N.E.2d 1090; *State ex rel. Moorehead v. Reed,* 177 Ohio St. at 6, 28 O.O.2d 409, 201 N.E.2d 594.

{¶ 48} Furthermore, even assuming that impossibility remains a defense in mandamus actions for court appropriations, it would require at a minimum that

the probate and juvenile courts' reasonable and necessary expenses "could not be funded without taking money from other county offices and rendering them unable to perform their statutory duties." *Weaver*, 62 Ohio St.3d at 207, 580 N.E.2d 1090, and fn. 3; *State ex rel. Brown v. Franklin Cty. Bd. of Commrs.* (1970), 21 Ohio St.2d 62, 50 O.O.2d 159, 255 N.E.2d 244, syllabus.

{¶ 49} The commissioners did not submit credible evidence that funding the probate court's 2003 budget order would render other county offices unable to perform their statutory duties.

{¶ 50} Therefore, because the commissioners have not rebutted the presumption that the probate and juvenile court budget orders are reasonable and necessary, they "are required to fund [the courts'] operations even if it requires the return of previously appropriated or encumbered funds, or the shutting down of other unmandated county offices or services." *State ex rel. Pike v. Hoppel* (Nov. 13, 2000), Columbiana App. No. 00 CO 34, 2000 WL 1726522.

Health Insurance Premium Copay

{¶ 51} The parties agree that the probate and juvenile courts are authorized to set the compensation packages for their employees, but the commissioners assert that the courts' failure to have their employees pay a 10 percent health insurance premium copay constitutes an abuse of discretion. Despite the commissioners' argument, two of them admitted that the judges acted within their legal authority by refusing to implement the commissioners' copay resolution. The copay resolution did not affect the courts' 2003 budget appropriations.

{¶ 52} Nevertheless, the judges' decision to exempt their employees from the copay resolution is contrary to the State Auditor's recommendation as well as the prevailing policy in state and private employment requiring an employee contribution and might be considered arbitrary and capricious.

{¶ 53} We need not, however, resolve the judges' claims. "[I]f the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704. Although the allegations of the judges' complaints are couched in terms of compelling affirmative duties, i.e., to *amend* the resolution and to *remove* the 10 percent copay for probate and juvenile court employees, the essence of their claims is declaratory judgment and prohibitory injunction. That is, the true objects of their claims are (1) a declaratory judgment: a judgment declaring that the 10 percent copay resolution may not be applied to probate and juvenile court employees, and (2) a prohibitory injunction: an order enjoining the commissioners from so applying the 10 percent copay resolution. Therefore, we lack

jurisdiction to consider the judges' claims.  See *State ex rel. Satow v. Gausse–Milliken*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 13–14.

## Bad Faith

{¶ 54} Judge Maloney and Judge Dellick further request that they be granted an award of various costs, including attorney fees, against the commissioners in their individual capacities because they acted in bad faith.

{¶ 55} In Ohio, the general rule is that absent a statute allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed acted in bad faith.  *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.* (2001), 93 Ohio St.3d 449, 452, 755 N.E.2d 883.

{¶ 56} Judge Maloney and Judge Dellick are not entitled to an award of attorney and other fees here.  Although the commissioners did not present sufficient evidence to overcome the presumptive reasonableness of the judges' 2003 budget orders, the evidence establishes that they had good-faith reasons for believing otherwise.  As noted previously, the county's fiscal difficulties were a relevant consideration.  *Weaver*, 62 Ohio St.3d at 206–207, 580 N.E.2d 1090.  And other county courts had complied with the county's budget targets for 2003. Further, Judge Maloney did not follow the prescribed budget procedure and instead issued an eleventh-hour order in December, only two days before the commissioners voted on the 2003 general-fund appropriation.  Although Judge Maloney's actions do not preclude his entitlement to mandamus, they restricted the time for the commissioners to consider the propriety of his order.  *Wilke*, 90 Ohio St.3d at 63–64, 734 N.E.2d 811.  Finally, the judges did not prevail on their mandamus claim regarding the health insurance premium copay.

{¶ 57} Therefore, we deny the judges' request for an award of fees.

## Conclusion

{¶ 58} Based on the foregoing, Judge Maloney and Judge Dellick did not act in an unreasonable, arbitrary, or unconscionable manner by ordering the commissioners to appropriate the funds requested in their 2003 budget orders.  Therefore, we grant writs of mandamus to compel the commissioners to comply with their appropriation orders.  Nevertheless, we advise the parties that " 'the public interest is served when courts co-operate with executive and legislative bodies in the complicated budgetary processes of government.' "  *Wilke*, 90 Ohio St.3d 55, 63, 734 N.E.2d 811, quoting *State ex rel. Giuliani v. Perk* (1968), 14 Ohio St.2d 235, 237, 43 O.O.2d 366, 237 N.E.2d 397.

{¶ 59} Insofar as the judges request writs of mandamus removing their employees from the health insurance premium copay resolution, we deny their claims. In addition, we deny the judges' requests for fees.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

RESNICK and F.E. SWEENEY, JJ., concur in judgment.

---

**LUNDBERG STRATTON, J., concurring.**

{¶ 60} This case presents a difficult issue that requires us to determine whether a court's request to county commissioners for an increased budget is reasonable when the county is faced with a severe revenue shortfall. Although I concur with the decision mandating the commissioners to fund Judge Maloney's operation, I am compelled to point out his unreasonableness when submitting his budget by court order instead of using the county's budget forms.

{¶ 61} I believe that Judge Maloney's method of using a court order is unreasonable and merely leads to confrontation and a public perception of noncooperativeness. We have stated that a court should make every reasonable effort, in the interests of intergovernmental cooperation, to adhere to the conventional legislatively promulgated budget process. *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St.3d 5, 6, 14 OBR 311, 470 N.E.2d 880.

{¶ 62} "We recognize that the power to control what a court spends, or to totally regulate the process of obtaining funds, ultimately becomes the power to control what the court does. Such a principle is an anathema to an independent judiciary. On the other hand a tripartite balance of power exists that must be respected. To this extent it is axiomatic that a court should cooperate, whenever possible, with the legislative budget process." Id. I do not believe that Judge Maloney's method adheres to our admonishment in *Arbaugh*.

{¶ 63} Nevertheless, the case law supports the request by Judge Maloney. Therefore, I concur with the decision to grant a writ ordering full compliance with the request from the probate court.

---

Mary Jane Stephens and John B. Juhasz, for relators.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Linette M. Stratford, Assistant Prosecuting Attorney, for respondents.