[Cite as *State ex rel. Moorhead v. Bd. of Ohio Hwy. Patrol Retirement Sys.*, 2014-Ohio-2499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Shannon M. Moorhead, | : | |
| Relator, | : | |
| v. | : | No. 13AP-575 |
| Board of Ohio Highway Patrol Retirement System and Ohio | : | (REGULAR CALENDAR) |
| Highway Patrol Retirement System, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 10, 2014

*Law Offices of Gary A. Reeve, LLC,* and *Gary A. Reeve,* for relator.

*Michael DeWine,* Attorney General, and *Brandon C. Duck,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Shannon M. Moorhead, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Highway Patrol Retirement Board ("OHPRB"), to vacate its decision denying her application for disability retirement and ordering OHPRB to find that she is entitled to that disability retirement.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who examined the evidence and issued the appended decision which included findings of fact and conclusions of law.

The magistrate recommends this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision.

{¶ 3}   In her first objection, relator contends that the magistrate erred in denying her motion for discovery.   Specifically, relator asserts that because this is an original action pursuant to Loc.R. 2(B) of the Tenth District Court of Appeals, she was entitled to discovery that may have led to evidence demonstrating a conflict of interest between the independent medical examiner, Marjorie C. Gallagher, M.D., and OHPRB.  We disagree.

{¶ 4}   Relator is not entitled to discovery because the sole issue for determination in this mandamus action is whether OHPRB abused its discretion when it denied relator's disability application.  This court has stated that whether a retirement board "abused its discretion in denying disability retirement benefits is limited to consideration of evidence contained in the record." *State ex rel. Davis v. School Emps. Retirement Sys.*, 10th Dist. No. 08AP-214, 2008-Ohio-4719, ¶ 22, citing *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 10th Dist. No. 07AP-486, 2008-Ohio-2798.  Further, relator waived any argument regarding a possible conflict of interest between Dr. Gallagher and OHPRB when she failed to raise the issue in the proceedings before OHPRB.  *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 31.

{¶ 5}   Accordingly, the relator's first objection to the magistrate's decision is overruled.

{¶ 6}   In her second objection, relator asserts the magistrate erred as a matter of fact and law when the magistrate found relator is not entitled to an order that respondent grant her application for disability retirement benefits.  Relator argues independent physicians concluded she suffered from posttraumatic stress disorder ("PTSD"), yet Dr. Gallagher "refused to even acknowledge the diagnosis of PTSD" and, instead, diagnosed relator as suffering from anxiety disorder.  Therefore, relator argues OHPRB should have given no weight to Dr. Gallagher's opinion when considering relator's application.

{¶ 7}   However, where there is conflicting medical evidence, a court cannot substitute its own judgment for that of the board and find an abuse of discretion. *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio*, 153 Ohio App.3d 589, 2003-Ohio-4181, ¶ 7 (10th Dist.).   An abuse of discretion connotes a board decision that is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217,

219 (1983). Where some evidence in the record supports the board's decision, it has not abused its discretion. *Marchiano*, 2009-Ohio-307, ¶ 21.

{¶ 8} Dr. Gallagher's medical evaluation noted relator's condition and symptoms had improved since she first returned to work following the fatal car accident in which she was involved. Further, Dr. Gallagher found relator's symptoms, at the time of the evaluation, did not meet the necessary criteria for PTSD nor did the symptoms interfere with relator's ability to function. Because OHPRB relied on the medical evidence in Dr. Gallagher's report, we agree with the magistrate's conclusion that OHPRB relied on some medical evidence supporting a finding that relator was not entitled to disability retirement. Accordingly, we overrule relator's second objection to the magistrate's decision.

{¶ 9} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration to relator's objections, we overrule both of relator's objections and adopt the magistrate's findings of fact and conclusions of law. Accordingly, we deny relator's request for a writ of mandamus.

*Objections overruled; writ denied.*

BROWN and O'GRADY, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Shannon M. Moorhead, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  13AP-575 |
| | : | |
| Board of Ohio Highway Patrol | : | (REGULAR CALENDAR) |
| Retirement System and Ohio | : | |
| Highway Patrol Retirement System, | : | |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 26, 2014

*Law Offices of Gary A. Reeve, LLC,* and *Gary A. Reeve*, for relator.

*Michael DeWine*, Attorney General, and *Brandon C. Duck,* for respondents.

IN MANDAMUS

{¶ 10} Relator, Shannon M. Moorhead, has filed this original action requesting that this court issue a writ of mandamus ordering respondent the Ohio Highway Patrol Retirement Board ("HPRB" or "board"), to vacate its decision which denied her application for a disability retirement and ordering the board to find that she is entitled to that disability retirement.

<u>Findings of Fact</u>:

{¶ 11} 1. On December 18, 2010, relator was driving in her cruiser when another car pulled out in front of her and she was unable to stop. Relator's cruiser struck the driver's side door and ultimately the driver died.

{¶ 12} 2. Relator has a workers' compensation claim which was originally allowed for the following conditions: "Sprain Lumbar Region[;] Adjustment Reaction-Mixed Emotion[;] Sprain of Ribs, Bilateral[;] Contusion of Lower Leg, Left[;] Head Injury, Unspecified[;] Sprain Shoulder/Arm NOS, Right Shoulder[;] Sprain of Neck[;] Sprain Elbow/Forearm NOS, Bilateral Forearm[;] Sprain of Wrist NOS, Bilateral."

{¶ 13} Ultimately, relator's workers' compensation claim would be additionally allowed for "posttraumatic stress disorder" ("PTSD").

{¶ 14} 3. Relator returned to full duty employment as a highway patrol officer in November 2011.

{¶ 15} 4. Her first weekend back at full duty employment, relator responded to a fatality. In her interview with Marjorie C. Gallagher, M.D., relator indicated that she handled that crash fairly well. Relator responded to another fatality on March 13, 2012. Relator told Dr. Gallagher that she handled the crash fairly well but was bothered more and had some nightmares. Relator responded to another fatality on March 20, 2012. In her interview with Dr. Gallagher, relator indicated that she was extremely upset at the manner in which the crash scene was handled. The decedent's body was left out in plain sight for hours. She explained that this crash was "just like hers. The male driver had no choice and could not do anything about it." At this time, relator began having nightmares again visualizing the face of the lady who recently died on the face of the man who died in the accident in which she was involved. At this time, she sought psychological counseling with Ralph E. Skillings, Ph.D.

{¶ 16} 5. On July 6, 2012, relator filed her first application for disability benefits. On her application, relator explained:

> PTSD- Post [Traumatic] Stress Disorder. I was diagnosed with PTSD as a result of being involved in an on-duty fatality crash. (12/18/10). On 3/20/12, I handled a fatal crash very similar to my own fatal crash.

{¶ 17} 6. Attached to her application, relator included a document which detailed her job duties as a highway patrol officer. Those duties included investigating non-injury, injury, and fatal crashes.

{¶ 18} 7. Relator submitted the July 3, 2012 report of her treating physician Dr. Skillings. According to Dr. Skillings, he expected that relator's condition would improve, but she needed more treatment. He noted that relator stated that she cannot investigate fatal crash events any longer. Ultimately, Dr. Skillings opined that relator was not totally incapacitated from performing her specific job duties and responsibilities, and that her incapacitation was not permanent.

{¶ 19} 8. Because her treating physician did not consider her disabled, her application was not considered.

{¶ 20} 9. Relator filed her second application for disability benefits on November 2, 2012. On her application, relator explained:

> PTSD - Post [Traumatic] Stress Disorder. I was diagnosed with PTSD as a result of being involved in an on-duty fatality crash, which occurred on 12/18/10. On 03/20/12, I investigated a fatal crash which was very similar to my fatal crash, resulting in the reoccurring PTSD.

{¶ 21} 10. Relator's application was supported by the October 11, 2012 report of Hong S. Kang, M.D. According to Dr. Kang, relator's condition was guarded/poor and she was permanently disabled. Dr. Kang noted that stress could cause her condition to worsen.

{¶ 22} 11. HPRB referred relator to Dr. Gallagher for an independent medical evaluation. In her December 17, 2012 report, Dr. Gallagher provided a detailed summary concerning the original accident in December 2010, relator's response to that treatment, as well as the three fatal car accidents which occurred after she returned to full duty work in November 2011. Concerning her treatment with Dr. Skillings and the reasons she changed physicians, Dr. Gallagher summarized:

> Trooper Moorhead reports that she was in treatment with psychologist Dr. Skillings initially several days a week and then once a week starting in 1/2011. According to Trooper Moorhead, PTSD was officially on her BWC record in 3/2011. Trooper Moorhead reports that she was in treatment with Dr. Skillings once a week from 3/2012 to 7/2012 and every

three weeks since 7/2012 until the end of 9/2012 when she had stopped treatment with him. She reports that during treatment she had gone back to the crash scene several times a week. Trooper Moorhead admits that she had stopped treatment with Dr. Skillings after she had felt betrayed that he had indicated that she would be able to return to work as a trooper at some point. According to Trooper Moorhead, she quit therapy with Dr. Skillings because he thought that he could get her back to work. Trooper Moorhead reports that she had started treatment with psychiatrist Dr. Kang in 9/2012 and was seeing him every three weeks. Her next appointment is in 5 weeks.

{¶ 23} Dr. Gallagher noted on several occasions that relator was improving. For example, relator reported that she had gained weight; however, she began working out and lost a significant amount of weight. Further, relator reported that she isolated herself and was socially withdrawn, and did not socialize with friends; however, she then indicated that she has two good friends with whom she ate lunch once a month. Her reasons for not eating with them recently was because they had all been busy. Further, relator reported that she and her husband socialized with another couple, she recently drove to Mississippi to visit her parents, and traveled to Virginia over Thanksgiving. Ultimately, in the discussion portion of her report, Dr. Gallagher stated:

Trooper Moorhead reports that she has been diagnosed with posttraumatic stress disorder. She was involved in a fatal car accident in 2010. She was very symptomatic following the accident, but obtained treatment and was able to return to work in 5/2011. Her job requires her to work car accident scenes. From her history, she was eager to go and help other troopers at car crash scenes after she had returned to work. She then had to work a scene that upset her, but her symptoms have improved quickly and have not been nearly as severe as they had been in 2010. She does not want to return to work as a trooper as she does not want to work car crash scenes anymore. She wants to retire on disability.

Currently Trooper Moorhead's symptoms are mild and do not meet the diagnostic criteria for posttraumatic stress disorder at this time. She was able to describe the crash scene in which she was involved and the other crash scenes in detail without evidence of any distress or anxiety. She admits to an improvement in her symptoms of anxiety. She reports that she has some anxiety symptoms when she

drives, but admits that she does not avoid driving and drives every day. She has nightmares twice a month. She wants to avoid car crash scenes, but did not when she had returned to work after the car crash in 2010. In fact, she was eager to help fellow troopers with other car crash scenes. No other symptoms of posttraumatic stress disorder were elicited. Trooper Moorhead reports difficulty with concentration, but there was no evidence during the psychiatric evaluation or on testing for dementia of any concentration impairment. She also reported that she isolates and is socially withdrawn, but objectively, from her extensive list of activities, she socializes with friends and family. She reports that she worries and always has. The anxiety predated her employment as a State Highway Patrol Trooper. Trooper Moorhead further reports some mild obsessive and compulsive symptoms, but the symptoms are not severe enough to meet the diagnostic criteria for Obsessive-Compulsive Disorder. She reported that she stutters, but did not stutter at any point during the evaluation. She reports that she cries, but did not cry at any point during the evaluation.

Significantly, Trooper Moorhead admits to alcohol abuse. She reports that she has four to five drinks twice a month. A female drinking more than two drinks is considered alcohol abuse. In addition, she takes Valium intermittently. The combination of alcohol and Valium can be lethal. Trooper Moorhead admits that she had had three drinks the day prior to the evaluation and then took Valium the day of the evaluation.

Trooper Moorhead is in treatment with a psychiatrist. She is being treated appropriately with Cymbalta and clonodine. It is recommended that Valium be stopped and other safer antianxiety medication be prescribed if necessary. Trooper Moorhead is [sic] also been treated with Depakote. A blood level, which she has never had, is recommended. It is further recommended that her alcohol abuse be addressed in treatment. Trooper Moorhead admits that she had quit treatment with her psychologist because he thought that he could get her back to work again. Her psychologist had been able to help her return to work when her symptoms had been more severe and had lasted longer. The intensive physical therapy for three hours qd is helping significantly.

Trooper Moorhead reports an extensive list of activities that includes driving out of town. Any psychiatric symptoms

Trooper Moorhead currently has are not severe enough to interfere with her ability to function. Given the improvement in her psychiatric symptoms with treatment, medication, and extensive physical therapy, her extensive list of activities, performance on testing for dementia, and mental status during the clinical psychiatric evaluation, it is my opinion that Trooper Moorhead is not permanently or presumed to be permanently disabled based on psychiatric evaluation and is able to return to work as a trooper.

{¶ 24} 12. In a memo dated January 23, 2013, the board's medical consultant Earl N. Metz, M.D., issued a memo for the record summarizing relator's file. Dr. Metz stated:

Ms. [Moorhead's] file is a thick one. * * * Throughout the record there is evidence of detailed psychological interviews most of which conclude that the trooper has evidence of PTSD. However, there are some discrepancies in the opinions among her medical care givers. A psychologist, Dr. Ralph Skillings, seems to have been the major source of treatment during the past two years or so, yet he notes that she is not totally disabled. A psychiatrist in Portsmouth, Dr. Hong Kang, has declared her totally disabled.

On November 28, 2012, Trooper [Moorhead] was examined by an independent psychiatrist, Dr. Marjorie Gallagher. Dr. Gallagher's report contains details of Ms. [Moorhead's] employment and her psychosocial history - she also explains the difference between the reports by Dr. Skillings and Dr. Kang. When Dr. Skillings reported that the trooper should be able to return to work, she stopped seeing him and began her psychiatric counseling with Dr. Kang. The trooper told Dr. Gallagher that she would not return to the patrol, a job that required her to work fatal crashes. The sum of the history relayed to Dr. Gallagher led her to believe that Ms. [Moorhead] had improved enough and had enough psychological resiliency to return to work as a trooper.

Dr. Gallagher's bottom line is that Ms. [Moorhead] "...is not totally and permanently incapacitated for duty with the Ohio State Highway Patrol."

{¶ 25} 13. In a letter dated January 25, 2013, relator was notified that the Health, Wellness and Disability Committee ("HWD") had voted to recommend that the board

deny her disability application and she had the opportunity to file a written request for reconsideration.

{¶ 26} 14.  By letter dated February 6, 2013, relator requested that the board reconsider.  In support of her request for reconsideration, relator attached outpatient notes from Dr. Kang dated September 27, 2012, October 10 and 31, 2012, November 27, 2012 and January 23 and February 20, 2013.

{¶ 27} 15. Dr. Metz prepared a second memo for the record, dated March 8, 2013, and indicated that he had reviewed the additional evidence relator submitted and still indicated that disability benefits should be denied.

{¶ 28} 16. By letter dated March 29, 2013, relator was notified that the HWD committee had again voted to recommend that the board deny her disability application.

{¶ 29} 17.  By letter dated April 25, 2013, relator was notified that the board had voted to deny her disability retirement.

{¶ 30} 18.  Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law</u>:

{¶ 31} Relator argues that the evidence is clear that she cannot return to her job due to the diagnosis of PTSD because she will not be able to investigate any serious traffic accidents that may involve fatalities.  Relator specifically points to the reports of Drs. Leisgang and Benson-Blankenship, which were submitted before the commission and asserts that these reports diagnosing her with PTSD clearly establish that she suffered from PTSD.  Relator argues that the board should have rejected Dr. Gallagher's opinion because she had concluded that relator did not have PTSD.

{¶ 32} Finding that relator misunderstands the substance and meaning of the reports submitted to the commission and how those reports are not germane to the issue of whether or not she is entitled to a disability retirement, as more fully explained hereinafter, the magistrate finds that relator's request for a writ of mandamus should be denied.

{¶ 33} Mandamus is the appropriate remedy for relator to seek relief from an adverse determination concerning disability retirement benefits or from other retirement decisions.  *See State ex rel. Pontillo v. Pub. Emp. Retirement Sys. Bd.,* 98 Ohio St.3d 500, 2003-Ohio-2120**;** *State ex rel. Moss v. Ohio State Hwy. Patrol*

*Retirement Sys.,* 97 Ohio St.3d 198, 2002-Ohio-5806; *State ex rel. Mallory v. Pub. Emp. Retirement Bd.,* 82 Ohio St.3d 235 (1998); and *State ex rel. McMaster v. School Emp. Retirement Sys.,* 69 Ohio St.3d 130 (1994). In order to prevail, relator must demonstrate that: (1) she has a clear legal right to the relief requested; (2) HPRB has a clear legal duty to provide the relief requested; and (3) relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Gill v. School Emp. Retirement Sys. of Ohio,* 121 Ohio St.3d 567, 2009-Ohio-1358.

{¶ 34} When there is conflicting medical evidence submitted to a public retirement system board, the court cannot substitute its judgment for that of the board and find an abuse of discretion. *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio,* 153 Ohio App.3d 589, 2003-Ohio-4181 (10th Dist.). The term abuse of discretion connotes a board decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). Where there is some evidence in the record to support the board's decision, the board has not abused its discretion. *State ex rel. Marchiano v. School Emps. Retirement Sys.,* 121 Ohio St.3d 139, 2009-Ohio-307. In *State ex rel. Thomas v. Pub. Emps. Retirement Sys.,* 10th Dist. No. 03AP-137, 2004-Ohio-1403, this court has stated that, "[i]n order to constitute an abuse of discretion, the court's decision must be so grossly inconsistent with fact or logic that it displays 'not the exercise of reason but instead passion or bias.' "

{¶ 35} As noted previously, relator's main argument is that Dr. Gallagher did not accept that she suffered from PTSD. Because Dr. Gallagher did not accept that she has PTSD, relator contends that her report is contrary to all the other evidence in the file. The majority of those reports were written and presented to the commission.

{¶ 36} In workers' compensation cases, once a claimant has their claim allowed for a certain condition, the claim is always allowed for that condition and that condition will appear as an allowed condition on every medical report and every order issued by the commission. However, for example, a claimant can have their claim allowed for a broken right arm. Obviously, if properly treated, the arm will heal and it is possible that the claimant will not have any limitations due to that allowed condition. However, the fact that the claimant is never bothered by the broken arm does not remove that allowance from his claim.

{¶ 37} In her report, Dr. Gallagher never stated that relator had not experienced PTSD. Dr. Gallagher stated that relator's symptoms "are mild and do not meet the diagnostic criteria for posttraumatic stress disorder at this time." All Dr. Gallagher is saying is that, at the time she examined her, relator was not presenting with symptoms of PTSD. That does not mean that Dr. Gallagher did not accept that relator had those symptoms at one time nor did Dr. Gallagher imply that relator would never suffer symptoms of PTSD in the future. Instead, Dr. Gallagher discussed relator's current treatment regimen, her alcohol abuse, and the medications she was taking and indicated that certain changes would be beneficial but that PTSD did not currently render her incapable of performing her job duties.

{¶ 38} Finding that the report of Dr. Gallagher does constitute some evidence upon which the board could rely to find that relator was not entitled to a disability retirement, it is this magistrate's decision that this court should deny her request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).