[THE STATE EX REL.] LECKLIDER, APPELLANT, *v.* SCHOOL
EMPLOYEES RETIREMENT SYSTEM, APPELLEE.

[Cite as *State ex rel. Lecklider v. School Emp. Retirement Sys.*, 104 Ohio St.3d 271, 2004-Ohio-6586.]

(No. 2004–1030—Submitted November 16, 2004—Decided December 15, 2004.)

**Per Curiam.**

{¶ 1} Appellant, Diane Z. Lecklider, was employed as a head cook for Greenville City Schools. As head cook, Lecklider was responsible for preparing the daily meal and for storing food and supplies in the school kitchen. One of the qualifications of the head-cook position is that the person be "[p]hysically capable of lifting food containers as required."

{¶ 2} In October 2001, Lecklider underwent surgery to repair a large rectocele.[1] According to Lecklider, following the surgery, she experienced rectal pain and spasms when she lifted heavy objects. In February 2002, Maria B. Lim–Kong, M.D., Lecklider's surgeon and treating physician, wrote a letter authorizing Lecklider, who had not yet fully recovered from surgery, to return to work, with the following restrictions: (1) that she work a maximum of four hours per day and (2) that she not lift more than five pounds.

{¶ 3} In March 2002, Lecklider applied to appellee, School Employees Retirement System ("SERS"), for disability retirement benefits. Lecklider submitted a March 2002 report from Dr. Lim–Kong. Dr. Lim–Kong diagnosed Lecklider as having pelvic discomfort, pressure, and spasms following her rectocele surgery. Dr. Lim–Kong concluded that Lecklider would remain physically incapacitated for at least the next 12 months and that Lecklider was unable to perform her previous duties as a head cook.

---

1. A rectocele is a prolapse or herniation of the rectum. Stedman's Medical Dictionary (26th Ed.1995) 1512.

{¶ 4} In April 2002, upon request by SERS, John D. Baluch, M.D., a urologist, examined Lecklider. Dr. Baluch diagnosed Lecklider with "chronic intermittent rectal pain secondary to lifting," but could not identify any physical abnormalities. Dr. Baluch felt that he was not qualified to give a recommendation concerning whether Lecklider was physically unable to do her job.

{¶ 5} In June 2002, the medical advisory committee of SERS concluded that a second medical evaluation should be obtained before it made a recommendation concerning Lecklider's application for disability retirement benefits.

{¶ 6} On August 7, 2002, Marc Cooperman, M.D., examined Lecklider. Dr. Cooperman noted that, in Lecklider's position as head cook, she "is periodically required to lift boxes of food that weigh up to 50 pounds." Based on his examination, Dr. Cooperman did not "find any basis to determine that she is unable to perform her job related duties." Nevertheless, he noted that because "[s]trenuous lifting * * * may clearly be a precipitating event in the recurrence of a rectocele," he thought that a "permanent restriction on lifting, limiting her to 25 pounds would be indicated." Dr. Cooperman certified that Lecklider was not physically or mentally incapacitated for a period of at least 12 months and was able to perform her duties as a head cook.

{¶ 7} The medical advisory committee reviewed the application and evidence and concluded that Lecklider was not permanently disabled from performing her duties as a head cook. The committee recommended that her application be denied.

{¶ 8} On September 13, 2002, SERS agreed with the committee's recommendation and denied Lecklider's application for disability retirement benefits. By letter dated September 16, 2003, SERS notified Lecklider of its decision and her right to appeal. On September 25, 2002, Lecklider submitted a timely notice of her intent to appeal from the SERS decision and requested a personal appearance before SERS.

{¶ 9} On December 11, 2002, Lecklider submitted an affidavit by Sharon F. Deeter, Food Service Director/Manager for the Greenville City Board of Education, and a letter from Dr. Lim–Kong to SERS. In her affidavit, Deeter stated that she had been Lecklider's immediate supervisor and that the head cook was required to lift food containers, bags, commodities, and cases in the following manner:

{¶ 10} "Individuals are instructed to use the team concept in lifting heavy food containers, bags, commodities, cases, etc. Each individual is instructed to contact the building janitor if the commodity is too heavy for lifting by the team concept. The commodities in cases herein described may weigh more than 25 pounds."

{¶ 11} Dr. Lim–Kong's letter, which was dated October 24, 2002, reiterated that Lecklider experienced rectal and pelvic spasms when she lifted or pushed heavy objects and that, based on the job descriptions, she was unable to perform any job in the school cafeteria for an indefinite period of time.

{¶ 12} On December 16, 2002, which was 91 days after the date on SERS's notice denying her application, Lecklider submitted a December 16, 2002 letter from Dr. Lim–Kong recommending that Lecklider not lift more than ten pounds. The letter further noted that this restriction was applicable from May 14, 2002, to May 2003.

{¶ 13} On January 16, 2003, SERS reviewed the information submitted by Lecklider and upheld its original decision denying her application for disability retirement benefits.

{¶ 14} On June 2, 2003, Lecklider filed a complaint in the Court of Appeals for Franklin County. In her complaint, as subsequently amended, Lecklider sought a writ of mandamus to compel SERS to find her entitled to disability retirement benefits. In the alternative, Lecklider requested a writ of mandamus to compel SERS to hold a hearing in which she could personally appear to present evidence and cross-examine witnesses.

{¶ 15} On May 18, 2004, the court of appeals denied the writ. The court of appeals rejected Lecklider's claims that SERS had abused its discretion in denying her application for disability retirement benefits and in denying her request for a personal appearance.

{¶ 16} This cause is now before the court upon Lecklider's appeal as of right.

### SERS Determination: Availability of Mandamus

{¶ 17} "The Public School Employees Retirement System was established for the purpose of providing retirement allowances and other benefits to public school employees other than teachers." 1 Carey, Anderson's Ohio School Law Guide (2003) 627, Section 8.25; R.C. 3309.01 et seq. "Under R.C. 3309.39(C), in order to be entitled to disability retirement benefits, a SERS member must be mentally or physically incapacitated for the performance of the member's last assigned primary duty by a disability condition that is either permanent or presumed to be permanent for at least the 12 months following the filing of the application for benefits." *State ex rel. Stiles v. School Emp. Retirement Sys.*, 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13.

{¶ 18} Because the final SERS decision is not appealable, mandamus is available to correct any abuse of discretion by SERS in denying disability retirement benefits. See *State ex rel. McMaster v. School Emp. Retirement Sys.* (1994), 69 Ohio St.3d 130, 133, 630 N.E.2d 701. SERS abuses its discretion when

its decision is unreasonable, arbitrary, or unconscionable. *Stiles,* 102 Ohio St.3d 156, 2004-Ohio-2140, 807 N.E.2d 353, ¶ 13.

## Denial of Disability Retirement Benefits

{¶ 19} Lecklider asserts that SERS abused its discretion in denying her application because Dr. Cooperman's opinion was internally inconsistent. Lecklider claims that SERS could not rely on his opinion that she was not disabled, when he had found that Lecklider's job as a head cook of a school cafeteria required her to lift boxes that weighed up to 50 pounds but also found that a 25–pound lifting restriction was appropriate for her.

{¶ 20} As the court of appeals concluded, however, SERS did not abuse its discretion in relying on Dr. Cooperman's opinion, because Lecklider's own evidence—the affidavit of her supervisor—established that she was not required to lift heavy items by herself, but could seek assistance from co-workers or the school janitor. Insofar as Lecklider challenges SERS's and the court of appeals' use of this affidavit, she invited any error by submitting the evidence in support of her appeal of the initial SERS decision. Cf. *State ex rel. Ohio Dept. of Mental Health v. Nadel,* 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49, ¶ 22, quoting *State ex rel. Kline v. Carroll,* 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 (" 'Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make' ").

{¶ 21} Based on the evidence submitted to SERS, it did not abuse its discretion in denying Lecklider's application for disability retirement benefits. Dr. Cooperman and the doctors of the medical advisory committee all concluded that Lecklider was not physically incapacitated from doing her job as a head cook. Although there was some evidence that she could not lift heavy objects, her own evidence established that her job did not require her to do so without assistance.

## Duty to Explain Decision Denying Disability Retirement Benefits

{¶ 22} Lecklider next asserts that SERS had a duty to specifically state the evidence it relied upon and explain the reasons for its decision to deny her application for disability retirement benefits.

{¶ 23} We reject Lecklider's assertion. In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus. *State ex rel. Woods v. Oak Hill Community Med. Ctr., Inc.* (2001), 91 Ohio St.3d 459, 461, 746 N.E.2d 1108. " '[N]othing in the statute or regulations suggests that the SERS retirement board or the members of its medical advisory board must issue a decision [stating the basis for its denial].' " *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 20, quoting *State ex rel. Copeland v.*

*School Emp. Retirement Sys.* (Aug. 5, 1999), Franklin App. No. 98AP–1173, 1999 WL 569279, appeal dismissed based on mootness (2000), 88 Ohio St.3d 1507, 728 N.E.2d 1.

Personal Appearance

{¶ 24} Lecklider also contends that SERS abused its discretion by denying her request for a personal appearance. Under the version of Ohio Adm.Code 3309–1–41(A)(4) in effect at the time of Lecklider's appeal from the initial SERS decision, "[a] personal appearance [before the retirement board's retirement committee] will not be granted unless 'additional objective medical evidence' as defined in paragraph (A)(3) of this rule is received by the retirement board within ninety days from the date on the notice of denial or termination."[2] 2000–2001 OMR 1678, 1679.

{¶ 25} Under former Ohio Adm.Code 3309–1–41(A)(3), "additional objective medical evidence" meant "current medical evidence documented by a licensed physician specially trained in the field of medicine pertinent to the illness or injury for which disability is claimed, and such evidence itself has not, heretofore, been submitted, and such evidence does not merely contain or reiterate findings of information contained in documents or evidence previously submitted." Id.

{¶ 26} Lecklider claimed that she was entitled to a personal appearance before SERS because she had submitted Dr. Lim–Kong's December 16, 2002 letter and the December 6, 2002 affidavit of her immediate supervisor.

{¶ 27} Lecklider's claim is not well taken. Dr. Lim–Kong's December 16, 2002 letter was submitted after the deadline for submitting additional objective medical evidence under former Ohio Adm.Code 3309–1–41(A)(4), which expressly prohibited personal appearances if the evidence was not submitted within 90 days of the date on the notice of denial.

{¶ 28} Moreover, as the court of appeals concluded, Dr. Lim–Kong's letter essentially reiterated her February 2002 letter recommending a weight-lifting restriction for an indefinite period. The only difference was her increasing from 5 to 10 pounds the weight that Lecklider could lift.

{¶ 29} Finally, Lecklider's supervisor's affidavit was not "additional objective *medical evidence.*" (Emphasis added.) Ohio Adm.Code 3309–1–41. Therefore,

---

2. Ohio Adm.Code 3309–1–41 was amended effective July 4, 2003. 2002–2003 OMR 2968. An SERS member will now be granted a personal appearance on appeal from an initial SERS decision denying or terminating disability benefits if the member submits "additional evidence" within 90 days of the date on the notice of denial or termination. Ohio Adm.Code 3309–1–41(A)(2)(c). "Additional evidence" is defined as "evidence that is current and pertinent to the illness or injury for which the disability was claimed and that has not been submitted before." Ohio Adm.Code 3309–1–41(A)(2)(d).

SERS did not abuse its discretion in rejecting Lecklider's request for a personal appearance.

## Conclusion

{¶ 30} Based on the foregoing, SERS did not act in an unreasonable, arbitrary, or unconscionable manner in denying Lecklider's application for disability retirement benefits. Accordingly, we affirm the judgment of the court of appeals denying the writ of mandamus.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in judgment only.

———————

Craig A. Dynes, L.L.C., and Craig A. Dynes, for appellant.

Jim Petro, Attorney General, and Emily A. Smith, Assistant Attorney General, for appellee.