DECISION
{¶ 1} Relator, Elizabeth R. Smith, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, School Employees Retirement System ("SERS"), to vacate its order that denied relator's application for disability retirement and ordering SERS to grant her a disability retirement. In the alternative, relator requests a limited writ of mandamus directing SERS to issue a new decision *Page 2 
specifically identifying the evidence relied upon and providing an explanation for its decision.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} As there have been no objections filed to the magistrate's decision, and it contains no error of law or other defect on its face, based upon an independent review of the evidence, this court adopts the magistrate's decision. Relator's request for a writ of mandamus is denied.
Writ denied.
 FRENCH and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 4} Relator, Elizabeth R. Smith, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, School Employees Retirement System ("SERS"), to vacate its order which denied relator's application for disability retirement and ordering SERS to grant her a disability retirement. In the alternative, relator requests a limited writ of mandamus directing SERS to issue a new decision *Page 4 
specifically identifying the evidence relied upon and providing an explanation for its decision.
Findings of Fact: {¶ 5} 1. In June 2005, relator filed an application for disability retirement benefits with SERS. Relator had been employed as a driver education instructor with the Wellsville School District.
 {¶ 6} 2. Relator's treating physician, Clement A. Cahall, M.D., certified that relator was physically incapacitated for a period of at least the next 12 months and that she was unable to perform her job duties due to lower extremity neuropathy with the underlying medical condition of spinal stenosis.
 {¶ 7} 3. Relator submitted medical evidence which indicated that she had been experiencing numbness and tingling, on the left side worse than the right side, in her lower extremities for some time and that, in her opinion, her symptoms were getting worse. MRIs of the lumbar spine and left hip were both negative. EMG/NCS studies also came back normal.
 {¶ 8} 4. Relator was seen by Ivan Garza-Urdiales, M.D., who issued a report dated July 7, 2004. In that report, Dr. Garza-Urdiales noted that relator had diminished vibration, pinprick, and light touch in her left hemi-body, without a sensory level. He noted further that there was no neurological explanation for relator's symptoms and suggested a trial of Neurontin to help her sensory symptoms.
 {¶ 9} 5. Relator was later diagnosed with polymyalgia rheumatica which is defined in Taber's Cyclopedic Medical Dictionary (20 Ed.2005), 1727, as:
 A rheumatologic illness marked by fevers, malaise, weight loss, muscle pain and stiffness (esp. of the shoulders and *Page 5 
pelvis), and morning stiffness. It occurs primarily, but not exclusively, in white individuals over age 60. The cause of the syndrome is unknown. Although there is no single diagnostic test for this condition, patients typically have a markedly elevated erythrocyte sedimentation rate (50 mm/hr) and no evidence of another disease (e.g., infection, cancer, rheumatoid arthritis, or lupus) as the underlying cause. Patients with the syndrome obtain rapid and durable relief from corticosteroids but usually require a course of treatment lasting 6 to 18 months. * * *
 {¶ 10} 6. According to the medical records of Dr. Cahall, relator was treated with a course of steroids sometime in 2005. In his June 9, 2005 office note, Dr. Cahall noted that relator was taking 30 mg. of Prednizone twice a day for three days then was to taper off the medication to 10 mg. every three days. In his follow-up notes from July 27, 2005, Dr. Cahall noted that relator was feeling better, was having less pain, and had been off steroids for two weeks. Relator was given the option of continuing steroidal treatment for six weeks or to treat if and when she has a flare-up. Relator and Dr. Cahall agreed to hold off on steroids due to the side effects and that relator would call in the event of a flare-up.
 {¶ 11} 7. Relator was seen by Daniel J. Mazanec, M.D., in July 2005. In his report, Dr. Mazanec noted that relator reported a five-year history of progressive numbness and paresthesia, as well as weakness involving her left greater than right leg; leg and back pain while walking; and intermittent left side, back and facial numbness. He noted further that relator had treated with physical therapy, which helped her back pain but did not alleviate any of her weakness or paresthesia. He also noted that relator had treated with steroids for one month and that she noted improvement during that time. Dr. Mazanec concluded: *Page 6 
 In summary, Elizabeth Smith has left-sided whole body paresthesias and subjective weakness. She has lesser symptoms in her right distal leg. She has had multiple neurologic evaluations, extensive imaging, and EMGs, which have failed to reveal a distinct cause for these symptoms. They have not improved with trials of physical therapy and appropriate pharmacologic therapy. She notes a significant subjective weakness, particularly in her left distal leg. From the standpoint of her ability to perform her duty as a driver's education instructor this is critical, as she is required to use her left leg to operate the accessory brake in the training vehicle. For this reason, it is my opinion that she is physically incapacitated for a period of at least 12 months dating to June 2005. She should be re-evaluated within a year in the future. I cannot predict whether or not and when recovery will occur.
 {¶ 12} 8. Relator was then seen by Gerald S. Steiman, M.D., for an independent medical evaluation. In his November 2005 report, Dr. Steiman noted relator's history, prior job activity, her complaints, and his review of various medical documents. Thereafter, Dr. Steiman noted the following upon physical examination:
 The motor exam is most notable by a diffuse 4+/5 proximal weakness. This is best exemplified by the observation Ms. Smith must repeatedly thrust to rise from a chair without using her hands for assistance (hands folded across chest). She has 4+/5 strength in the proximal shoulder and hip musculature with 5/5 strength in the distal extremity musculature. She has normal light touch and temperature perception on sensory testing of the arms and legs. Her reflexes are hypoactive yet symmetrical. Her body tone and bulk appears normal but she has myalgic discomfort upon palpation of the trapezius, paraspinal, buttock, and hip musculature.
 Formal grip strength is 7 PSI on the right compared to 6 PSI on the left. The right and left mid forearm circumferences are 26.0 versus 24.0 cm. Both mid calf circumferences are 36.0 cm.
 {¶ 13} Thereafter, Dr. Steiman concluded that relator was not physically incapacitated from performing her former job duties. *Page 7 
 {¶ 14} 9. The medical evidence was reviewed by the doctors of the medical advisory committee ("MAC"). Drs. Cooperman, Fallon, and Friedman discussed the evidence and agreed with Dr. Steiman's conclusion that relator was not incapacitated from performing her regular job duties. Dr. Edwin H. Season, Chairman of MAC, agreed and recommended that SERS deny relator's application for disability retirement.
 {¶ 15} 10. By letter dated January 20, 2006, relator was advised that her disability application was being disapproved.
 {¶ 16} 11. Relator appealed and submitted additional medical evidence including the March 2006 functional capacity evaluation performed at the Cleveland Clinic Foundation. The evaluator concluded that relator's lifting capacity was below the sedentary demand level and that she could sit for 55 minutes at a time, stand for 12 minutes at a time, and walk for less than four minutes at a time. Although the evaluator was not able to conclude whether or not relator could perform her job responsibilities, she did note that relator would benefit from further rehabilitation.
 {¶ 17} 12. In his June 2006 report, Dr. Cooperman recommended that relator's appeal be discussed at a special conference because the functional capacity evaluation raised an issue concerning relator's ability to perform her job. However, Dr. Cooperman did note that there was no other objective data to support relator's physical complaints. He noted further that relator was extremely uncomplimentary about her prior neurologic evaluation with Dr. Steiman, and that a third independent evaluation might be useful in making the final determination.
 {¶ 18} 13. Following a conference, Drs. Cooperman, Fallon, and Friedman again recommended that relator's disability application be denied. *Page 8 
 {¶ 19} 14. Ultimately, by letter dated July 24, 2006, relator was notified by Dr. Season that MAC saw no basis to change its original decision to deny her disability retirement.
 {¶ 20} 15. Relator was formally notified that SERS was denying her disability application by letter dated July 24, 2006.
 {¶ 21} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusion of Law: {¶ 22} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 23} Pursuant to R.C. 3309.39, the determination of whether a member of SERS is entitled to disability benefits is solely within the province of the retirement board. State ex rel. McMaster v. School Emp.Retirement Sys. (1994), 69 Ohio St.3d 130. However, a determination by the retirement board that an applicant is not entitled to disability retirement benefits is subject to review in mandamus, which may also be utilized to correct any other abuse of discretion in the proceedings. The standard of review in mandamus is to determine whether SERS abused its discretion in denying disability retirement benefits. SERS abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. State ex rel. Stiles v. School Emp. RetirementSys., 102 Ohio St.3d 156, 2004-Ohio-2140. *Page 9 
 {¶ 24} In this mandamus action, relator contends that SERS ignored the overwhelming evidence of relator's problems and argues that the reports of relator's treating physicians, Drs. Cahall, Garza-Urdiales, and Dr. Mazanec, should be given greater weight than the report of the independent medical examination by Dr. Steiman. Further, relator requests that this court apply the reasoning applied in State ex rel.Green v. Public Emp. Retirement Sys. (June 22, 1999), Franklin App. No. 98AP-567, and require SERS to identify the evidence relied on and to explain the reasons for denying her application. For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 25} First, this court has already addressed relator's first argument in State ex rel. Copeland v. School Emp. Retirement Sys. (Aug. 5, 1999), Franklin App. No. 98AP-1173. In that case, the claimant had argued that SERS failed to give proper weight and consideration to the reports of her two treating physicians. Claimant argued that the opinions of treating physicians should be accorded greater weight. However, this court noted that there was no authority to support the claimant's proposition that the authority of treating physicians should be accorded more weight than those of the independent medical examiners appointed by SERS. As such, this argument of relator is not well-taken.
 {¶ 26} Next, relator asks this court to apply the reasoning from theGreen decision to relator's action. In Green, the claimant had been denied a disability retirement by the Public Employees Retirement System ("PERS") and it filed a mandamus action in this court arguing, in part, that PERS' decision denying his disability retirement did not identify the evidence that PERS relied on and failed to explain the reasons for denying his *Page 10 
application. This court examined the statutes and rules applicable to PERS and concluded that, because Ohio Adm. Code 145-11-02 specifies that the PERS board's denial of a disability benefit shall state the basis of denial, this court concluded that the rationale from State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203, which applies in workers' compensation cases, should apply to decisions from PERS.
 {¶ 27} The present case involves SERS and not PERS. No matter how desirable it would be to have SERS identify the evidence it relies upon and provide a brief explanation when it denies disability retirement benefits, the statutes and rules which apply to SERS do not require that SERS state the basis for its denial of disability retirement. See, also,[State ex rel.] Lecklider v. School Emp. Retirement Sys.,104 Ohio St.3d 271, 2004-Ohio-6586, at ¶ 23, wherein the Supreme Court of Ohio stated:
 * * * In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus. * * * `[N]othing in the statute or regulations suggests that the SERS retirement board or the members of its medical advisory board must issue a decision [stating the basis for its denial].' * * *
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that SERS abused its discretion in denying her disability retirement benefits and this court should deny relator's request for a writ of mandamus. *Page 1