DECISION
{¶ 1} Relator, Barbara Marchiano, commenced this original action in mandamus seeking an order compelling respondent, School Employees Retirement System ("SERS"), to vacate its decision denying her disability retirement and to enter an order compelling SERS to grant her request for disability retirement.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Relying upon State ex rel. Woods v. Oak Hill CommunityMed. Ctr. (2001), 91 Ohio St.3d 459, and State ex *Page 2 rel. Lecklider v. School Emp. Retirement Sys., 104 Ohio St.3d 271,2004-Ohio-6586 at ¶ 23, the magistrate noted that there is nothing in either the governing statutes or rules that require SERS or the members of the Medical Advisory Committee ("MAC") to state the basis for its denial of disability retirement. The magistrate also rejected relator's challenges to Dr. Hawkins' report. The magistrate found that Dr. Hawkins' report constituted some evidence upon which SERS could rely in denying relator disability retirement. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed eight separate objections to the magistrate's decision. In her first objection, relator contends that the magistrate erred in denying her discovery. We disagree.
 {¶ 4} Relator is not entitled to discovery because the sole issue for determination in this mandamus action is whether SERS abused its discretion when it denied relator's disability application. State exrel. McMaster v. School Emp. Retirement Sys. (1994), 69 Ohio St.3d 130,133 (determination of whether applicant is entitled to disability retirement is subject to mandamus review, which may be utilized to correct an abuse of discretion in the proceedings below). That determination is limited to the information contained in the record. Therefore, we overrule relator's first objection.
 {¶ 5} In her second objection, relator contends that the magistrate erred by refusing to require SERS to explain the basis for its decision. Again, we disagree.
 {¶ 6} The magistrate correctly relied upon our prior decision inState ex rel. Copeland v. SERS (Aug. 5, 1999), Franklin App. No. 98AP-1173, for the proposition that nothing in the governing statutes or rules require SERS or the members of the MAC to explain the basis for the denial of disability retirement. This proposition of law was *Page 3 
expressly adopted by the Supreme Court of Ohio in State ex rel. Pipolyv. STRS, 1995 Ohio St.3d 327, 2002-Ohio-2219, at ¶ 20; see, also,State ex rel. Woods, supra; State ex rel. Lecklider, supra. Therefore, we overrule relator's second objection.
 {¶ 7} In her third objection, relator asserts that the magistrate erred by concluding there is some evidence to support SERS' decision. Essentially, relator challenges the application of the "some evidence" standard to this mandamus action. Relator asserts that this court should review a SERS decision to determine whether the decision is "reasonable in light of the evidence." However, we cannot simply disregard the applicable standard articulated by the Supreme Court of Ohio inKinsey v. Bd. of Trustees of the Police Firemen's Disability PensionFund (1990), 49 Ohio St.3d 224, 226. In Kinsey, the court held that mandamus relief must be denied when there is "some evidence" to support the retirement system's decision. When there is some evidence to support the decision, the retirement system has not abused its discretion.
 {¶ 8} Here, the magistrate applied the correct standard and did not err in finding that Dr. Hawkins' report constituted some evidence supporting SERS' decision. Therefore, we overrule relator's third objection.
 {¶ 9} In her fourth and fifth objections, relator contends that the magistrate erred by concluding that SERS considered all the evidence presented. We disagree.
 {¶ 10} Other than the simple fact that relator disagrees with SERS' decision, relator points to nothing in the record that suggests that SERS failed to fully and fairly consider all the evidence in the record. As SERS points out, it reached its determination after receiving the report of the MAC, which is required to review all evidence and information submitted before making a recommendation. Ohio Admin. Code 3309-1-40(F). We note that after originally reviewing all the medical *Page 4 
evidence, the MAC determined that additional medical evidence was necessary before it could submit its report. Relator's assertion that SERS failed to consider all the evidence is without merit. Therefore, we overrule relator's fourth and fifth objections.
 {¶ 11} Relator contends in her sixth objection that the magistrate erred by concluding that relator waived her right to challenge Dr. Hawkins' independence by failing to raise this issue before the SERS board. Relator asserts that she challenged Dr. Hawkins' independence in a pre-hearing submission and in the hearing before the board. After reviewing the portions of the record relied upon by relator, we agree with the magistrate's finding that relator never argued that Dr. Hawkins was not an independent medical examiner due to a financial or other compromising relationship with SERS. Nor does the record support a challenge to Dr. Hawkins' independence on these grounds. Accordingly, we overrule relator's sixth objection.
 {¶ 12} Relator contends in her seventh and eighth objections that the magistrate erred in concluding that Dr. Hawkins was competent to express an opinion on the necessity of pain medication for relator and that his opinion was unequivocal. We disagree.
 {¶ 13} First, as SERS points out, Dr. Hawkins did not offer an opinion on the necessity of pain medication for relator. Rather, he opined that the medications were impeding any ability to accurately determine if there was an underlying disabling condition because the medications were causing relator's cognitive dysfunction and depressed mood. The record does not support relator's assertion that Dr. Hawkins was not competent to express this opinion. Essentially, relator wants this court to reweigh the medical evidence. That is not our role in mandamus. Therefore, we find relator's argument unpersuasive. *Page 5 
 {¶ 14} Second, Dr. Hawkins' opinion is not equivocal. He stated that the cognitive dysfunction relator was experiencing would likely prevent her from performing her duties as an instructional aide. He also opined that the cognitive dysfunction was caused by the medications she was taking. Lastly, he opined that if relator stopped taking the medications (which was relator's desire), the cognitive dysfunction would cease and relator could perform the duties of an instructional aide. Based on these findings, we agree with the magistrate's determination that SERS did not abuse its discretion when it relied on Dr. Hawkins' report in denying relator disability retirement. Therefore, we overrule relator's seventh and eighth objections.
 {¶ 15} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Writ of mandamus denied.
 SADLER and FRENCH, JJ., concur. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 17, 2008 IN MANDAMUS {¶ 16} Relator, Barbara Marchiano, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, School Employees Retirement System ("SERS"), to vacate its decision denying her disability retirement and to determine that she is entitled to disability retirement instead. *Page 7 
Findings of Fact: {¶ 17} 1. In December 1997, relator was working as an instructional aid at Lockland Elementary. Her job duties included, but were not limited to:
 Teaching 3 Direct Instruction reading groups each morning. Direct Instruction is a very interactive reading program with many large repetitive motions used to teach it properly, it is not sedentary. Carrying heavy bins of reading material from the classroom to the teaching area.
 Conduct small group and one on one educational interventions with at risk students who need extra help. Track progress and create reports to validate how these students are progressing. This also requires carrying heavy bins of materials, sometimes up and down stairs.
 Supervising a 45-min. lunch duty and a 15-min. playground duty. To do this properly requires repeatedly circling the area the children are in to see that they are safe.
 Responsible for helping the classroom teachers prepare educational materials for the entire 1st grade this includes copying, repetitive stapling of large packets, tracing and cutting with scissors as well as cutting shapes with the Ellison machine (which requires some force).
 Required at times to attend to and sometimes restrain students who are physically acting out. If necessary escort them to the office from wherever they may be, classroom, playground, cafeteria, hallway etc.
 {¶ 18} 2. Relator's injury occurred on December 1, 1997. The injury occurred as follows:
 As you know, she actually has a fairly extensive history which began December 1, 1997 when an autistic student lunged across the room and landed on top of her causing her to hit her head on the back of a table and hit the back of her neck. She noted the immediate onset of pain in the head, pain at the vertebral prominence and pain in the right wrist. She developed progressive symptoms of right arm pain over the next few weeks. * * * *Page 8 
 {¶ 19} 3. Relator was treated conservatively, had chiropractic treatment, and was ultimately referred to a neurologist because her symptoms failed to resolve.
 {¶ 20} 4. The results of an MRI taken in July 2001 revealed "[s]mall central disc protrusion and/or spur at C6-7 with minimal cord impingement."
 {¶ 21} 5. In 2002, relator's treating physician, Mitchell E. Simons, M.D., began treating relator with periodic myelographic and epidural steroid injections. The treatments provided relator with significant relief from her pain. However, following a treatment in April 2004, relator experienced numbness and consistent pain. Although relator was examined by a variety of physicians, the cause of the pain was never explained.
 {¶ 22} 6. Relator submitted an application for disability retirement in June 2005. The report from her treating physician, Christopher D. Sweeney, M.D., certified her as disabled due to cervical disc disease, with the underlying conditions of occipital neuropathy, opioid tolerance, and myofascial pain.
 {¶ 23} 7. Relator also submitted the March 2005 report of Ann Tuttle, M.D. Dr. Tuttle noted that relator's condition had declined following the April injection and that relator reported having significant difficulties performing the activities of daily living. Dr. Tuttle identified the following conditions from which relator was suffering: "Cervical degenerative disc disease with myofascial pain," "[o]ccipital neuralgia," "[significant psychosocial distress related to her pain and disability," and "[o]pioid tolerance." Dr. Tuttle also noted that relator was currently taking the following medications: "Kadian" (narcotic pain reliever), "Baclofen" (muscle relaxer), "Nexium" (used to treat gastro-esophageal reflux disease), "Gabitril" (seizure control medication), "Klonopin" (seizure control/panic disorder medication), "Actiq" (narcotic pain reliever), and "Dicyclomine" *Page 9 
(used to treat irritable bowel syndrome). Dr. Tuttle later recommended that relator be re-evaluated, both from a surgical and psychological standpoint, because of her pain psychology.
 {¶ 24} 8. SERS sent relator to Paul J. Cangemi, M.D., for an independent medical evaluation. In his December 9, 2005 report, Dr. Cangemi noted that relator's motor function, lateral bending, flexion, and extension were essentially within normal limits with the exception of relator's complaints of diminished sensation in her right index and long fingertips. He noted that relator's motor function appeared to be within normal limits with good strength measure. Further, with the exception of the fact that relator kept her head tilted to the right (which she indicated was more comfortable), relator could readily straighten to a normal posture, could touch her toes and could walk across the floor on her toes and on her heels without difficulty. Dr. Cangemi noted the following diagnoses: "Acute cervical strain, resolved," "[m]ild degenerative disc disease cervical spine with no evidence of radiculopathy or myelopathy noted," "[o]pioid tolerance," "[s]omatoform pain disorder," and "[o]ccipital neuralgia, moderate in severity." Thereafter, Dr. Cangemi stated:
 Mrs. Marchiano has had chronic neck pain as well as low back pain ever since her injury in 1997. Despite this, she remained gainfully employed up until 2004 at which time she had a right occipital nerve block resulting in a persistent occipital neuralgia which has precluded her returning to work. I would certainly concur that this patient has developed a significant tolerance to opioid analgesics because of the simple fact that she's taking rather large doses of Kadian without significant pain relief. I would further agree with Dr. Mitchell Simons that she shows evidence of a significant psycho-social distress related to her pain and disability. Dr. Christopher Sweeney has indicated on April 11, 2005 that he considers her to be disabled for at least the next 12 months as a result of the following conditions: 1) Cervical disc disease. 2) Occipital neuralgia. 3) Opioid tolerance. 4) *Page 10 
Myofascial pain. Considering the fact that these are the conditions for which I was asked to make a determination, I would concur that she is disabled on this basis. I realize that the main symptom is that of pain which is very difficult to measure. I would not state that she is disabled on the basis of cervical disc disease but, since I am forced to consider the other conditions listed above, I think therefore that the pain has to be considered a disabling feature.
 {¶ 25} 9. After a review of the medical records, the members of the medical advisory committee ("MAC") were concerned that there was a lack of objective findings in Dr. Cangemi's report. Further, because both Drs. Tuttle and Cangemi indicated that there was a psychological component to relator's difficulties, certain members of MAC requested a psychiatric evaluation.
 {¶ 26} 10. Relator was referred to James R. Hawkins, M.D., for a psychiatric evaluation. In his review of the medical records, Dr. Hawkins noted that relator's August 2004 EMG was normal and that James Anthony, M.D., indicated that there was no significant finding of a neurological disorder to explain relator's pain. Dr. Hawkins also noted the July 2001 MRI as being consistent with small central disc protrusion and/or spur at C6-7 with minimal cord impingement. Dr. Hawkins also noted that, in spite of the fact that doctors had prescribed relator escalating doses of narcotic medications, relator was not provided with relief and she personally indicated that she wanted to discontinue the medicines as she believed they contributed to her feeling "stupid." After reviewing the records and interviewing relator, Dr. Hawkins determined that the various medications which she was taking had left her cognitively impaired and contributed to her depressed mood. With regards to whether relator had a somatization disorder, Dr. Hawkins concluded that she did not meet the criteria for the following reasons:
 Mrs. Marchiano does not meet medical criteria for a Somatization Disorder. This disorder requires 4 pain symptoms, *Page 11 
2 gastrointestinal symptoms, one sexual sympton, and one pseudoneurological symptom, all of which cannot be fully explained by a known general medical condition. In this case, although her pain symptoms are somewhat bizarre, the remainders of her physical symptoms are easily explained by narcotic medication and irritable bowel syndrome.
 {¶ 27} Ultimately, Dr. Hawkins concluded that the medical records he reviewed did not provide objective findings to substantiate her chronic pain complaints, the symptoms attributed to occipital neuralgia seemed extreme, relator was taking significant amounts of narcotic pain medication as well as other medications which were causing cognitive slowing and depressed mood, and that detoxification from these substances was necessary to give a more accurate picture of relator's true disabilities. Ultimately, Dr. Hawkins concluded that relator was not incapacitated from performing her school duties for a continued period of at least 12 months and further indicated that he would be happy to re-examine relator once she was detoxified from the addictive substances.
 {¶ 28} 11. Upon review, the doctors of MAC concluded that relator did not qualify for disability retirement based upon the report of Dr. Hawkins.
 {¶ 29} 12. Relator appealed and submitted additional medical evidence. Relator submitted the April 2006 psychiatric evaluation of Fred R. Moss, M.D., who opined that relator suffered from dysthymia and that she required ongoing psychotherapy. Relator also submitted the August 2006 report of Dennis J. Schneider, Ed.D., who explained that relator's dysthymic disorder was work prohibitive and rendered her temporarily and totally disabled. Relator also submitted the June 2006 report of Usman A. Siddiqui, M.D., who recommended further neurological testing. *Page 12 
 {¶ 30} 13. A hearing was held before MAC. Relator appeared and testified about her condition and further indicated that she had been greatly distressed during her examination by Dr. Hawkins. According to relator, Dr. Hawkins was "very aggressive" and "he took a look at the medications that I was on and he actually used the word `junkie'." She indicated that Dr. Hawkins was very nasty, she was on the verge of tears, and she ultimately just agreed with everything he said in order to end the examination.
 {¶ 31} 14. Following the hearing, the members of MAC denied relator's disability retirement. Dr. Fallon suggested an independent medical evaluation to determine relator's status.
 {¶ 32} 15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 33} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 34} Relator raises two arguments in this mandamus action. First, relator contends that SERS should be required to explain their decisions. Second, relator contends that SERS abused its discretion in denying her disability retirement on the following grounds: (1) because of an irrebuttable presumption in favor of board doctors, SERS does not consider other evidence; (2) Dr. Hawkins' report should be stricken from the record because Dr. Hawkins is not disinterested, is not competent, and his report is equivocal and/or ambiguous; and (3) all the medical evidence clearly establishes that *Page 13 
relator is entitled to disability retirement. For the reasons that follow, this magistrate disagrees.
 {¶ 35} "The Public School Employees Retirement System was established for the purpose of providing retirement allowances and other benefits to public school employees other than teachers." State ex rel. McMaster v.School Emp. Retirement Sys. (1994), 69 Ohio St.3d 130, 133, citing 1Baker Carey, Ohio School Law (1993) 399, Section 8.25. Pursuant to R.C. 3309.39(C), in order to be entitled to disability retirement benefits, a SERS member must be mentally or physically incapacitated for the performance of the member's last assigned primary duty by a disabling condition that is either permanent or presumed to be permanent for at least the 12 months following the filing of the application for benefits. Because there is no provision for appealing a final SERS decision, mandamus is available to correct any abuse of discretion by SERS. McMaster, at 333. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. State ex rel. Van Dyke v.Pub. Emp. Retirement Bd., 99 Ohio St.3d 430, 2003-Ohio-4123.
 {¶ 36} Relator first argues that SERS either has or should have a duty to specifically state the evidence upon which it relied and explain the reasons for its decision to deny her application for disability benefits. This magistrate disagrees. On several occasions, both this court and the Supreme Court of Ohio have held otherwise. In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus. See State ex rel. Woods v. Oak Hill CommunityMed. Ctr. (2001), 91 Ohio St.3d 459, and State ex re.] Lecklider v.School Emp. Retirement Sys., 104 Ohio St.3d 271, 2004-Ohio-6586. There is *Page 14 
nothing in either the statute or the regulations which suggests that the SERS retirement board or the members of MAC are required to issue a decision stating the basis for its denial. Id. As such, relator's first argument fails.
 {¶ 37} Relator's second argument raises several points. First, relator argues that there is an irrebuttable defacto presumption in favor of board doctors. Relator claims that it is an abuse of discretion for SERS to rely exclusively on one of the doctors to whom SERS referred relator without providing any analysis or explanation. This magistrate disagrees.
 {¶ 38} Pursuant to R.C. 3309.39(C), SERS is authorized to direct claimants to be examined by one or more competent disinterested physicians. In the present case, one of the doctors to whom SERS referred relator was Dr. Hawkins. R.C. 3309.39 gives SERS the sole discretion to determine whether a member is entitled to SERS disability coverage. Ohio Adm. Code 3309-1-40(F), promulgated pursuant to R.C. Chapter 3309., requires that all the medical evidence and other information submitted is to be reviewed before a disability determination is made. SERS is not required to give all the medical evidence in the record equal weight. Instead, SERS reviews the evidence and determines the issue. Because SERS is not required to provide an explanation, so long as there is some evidence in the record to support the determination of SERS, then this court cannot find that SERS abused its discretion.
 {¶ 39} Pursuant to the procedures outlined in Ohio Adm. Code 3309-1-41(A), it is apparent that the attending physicians and independent physicians' reports were reviewed by the members of MAC. Further, after originally reviewing all the medical evidence, the members of MAC determined that additional medical evidence was necessary. This, in and of itself, indicates that MAC physicians did review all the *Page 15 
evidence in the record including the reports and other information submitted by relator. There is no requirement that the opinions of treating physicians should be accorded greater weight than those of the independent medical examiners. See State ex rel. Schwaben v. School Emp.Retirement Sys. (Aug. 5, 1996), 76 Ohio St.3d 280, and State ex rel.Copeland v. School Emp. Retirement Sys. (1999), Franklin App. No. 98AP-1173.
 {¶ 40} Relator also contends that the report of Dr. Hawkins should be stricken from the record because Dr. Hawkins is not a disinterested, independent examiner, he was not competent to provide the opinion he provided, and his report is equivocal and/or ambiguous.
 {¶ 41} Relator argues that Dr. Hawkins was not a disinterested examiner. First, relator argues that Dr. Hawkins is a professional witness and, as such, he is not a disinterested independent examiner. Relator's argument is not relevant and does not demonstrate bias. Relator cites federal cases indicating that where benefit plans repeatedly retain certain physicians, those physicians may have an incentive to determine that a member is not disabled in order to preserve their financial arrangements. While relator's argument could potentially have some validity, the magistrate is compelled to reject her argument. In this regard, relator contends that it was her intention to pursue discovery in this case to demonstrate that Dr. Hawkins was indeed a biased physician. However, upon review of the record, relator and her counsel failed to make this argument at the hearing held on her disability application. While relator and counsel did argue that Dr. Hawkins' manner of addressing relator was indicative of his obvious bias, relator never contended that SERS referred too many applicants to Dr. Hawkins for an examination and that Dr. Hawkins had good reason to *Page 16 
find against granting disability. Because relator could have made this argument in the proceedings below and SERS could have made the determination to refer her to another physician as suggested by Dr. Fallon, relator should not be permitted to make this argument here. Further, to the extent that relator argues that Dr. Hawkins was hostile, she made that argument before SERS and that argument was rejected. Further, upon review of Dr. Hawkins' report, there is no evidence of hostility or other bias even remotely evident from a reading of that report. Instead, the report appears very professional. Dr. Hawkins ultimately concludes that he cannot say that relator is incapacitated from performing her job for at least the next 12 months without seeing her again after she has been weaned off the narcotic medications which she has been taking for years. Dr. Hawkins opined that relator's cognitive deficiencies and depressed mood were exacerbated if not actually caused by the medications. Relator contends that Dr. Hawkins was not competent to make this decision, but this magistrate disagrees. It is undisputed that relator was taking high doses of more than one narcotic pain medication. As a physician, Dr. Hawkins would be knowledgeable concerning the effects those medications would have on a patient. Further, even relator herself indicated that the medications made her feel "stupid," she did not think they were helping her any longer, and she did not desire to take them any longer. Further, Dr. Hawkins' report was neither equivocal nor ambiguous. Relator points out that Dr. Hawkins indicated that she was not able to return to her former job at the time of the evaluation, and yet he indicated that she very well may be able to return to work before the expiration of 12 months. As an examining physician, Dr. Hawkins was required to give an opinion as to whether or not he believed relator was incapacitated from the performance of her job for at least 12 months. In this case, although he indicated she *Page 17 
was currently incapacitated, Dr. Hawkins was not able to opine that her disability would extend for 12 months or longer. As such, this argument fails as well.
 {¶ 42} Lastly, relator contends that all the evidence in the record supports a finding that she is entitled to disability retirement. As indicated above, there is some evidence in the record upon which SERS could rely in denying her disability retirement application. SERS was not required to give greater weight to relator's medical evidence and, because there is some evidence in the record to support the determination, relator has not demonstrated that SERS abused its discretion.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that SERS abused its discretion in denying her application for disability retirement benefits and relator's request for a writ of mandamus should be denied. *Page 1